RALPH EMERSON

*v.*

A. C. BEMIS *et ux.*

1. FRAUDULENT CONVEYANCE—*voluntary conveyance to wife as against pre-existing creditors.* The general rule is, that a voluntary conveyance, as against pre-existing creditors, is fraudulent in law and void. Where there is no actual fraudulent intent, and the gift, or provision, made by a debtor to his wife or child, is a reasonable one, under the circumstances, leaving ample property unencumbered for the payment of the party's debts, not materially lessening their then prospect of payment, the gift, or provision, will be sustained as valid.

2. Where a party, in embarrassed circumstances, through a relative, had land amounting in value to two-thirds of his estate conveyed to his wife, so that ample property for the payment of his debts, considering the amount of exemption allowed, and the probable immediate and necessary and reasonable demands for the support of his family, was not left, and leaving it doubtful if any thing could be reached by his creditors, it was *held*, that the conveyance to his wife was fraudulent and void as to pre-existing creditors.

APPEAL from the Circuit Court of Winnebago county; the Hon. WILLIAM BROWN, Judge, presiding.

This was a creditor's bill, filed by Ralph Emerson, against A. C. Bemis, and Orissa V. Bemis, his wife, to subject certain real estate conveyed to Orissa V. Bemis, to the payment of a judgment against A. C. Bemis. The opinion of the court states the essential facts of the case.

Mr. WILLIAM LATHROP, for the appellant.

Messrs. CRAWFORD & MARSHALL, for the appellees.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was a bill in chancery, to charge certain land in Winnebago county, standing in the name of Orissa V. Bemis, wife of A. C. Bemis, with the payment of a judgment for about three hundred dollars in favor of appellant, against A. C. Bemis, upon which execution had been issued, and returned *nulla bona.*

The original indebtedness, out of which the judgment arose, was evidenced by two promissory notes, dated July 8, 1857, made by A. C. Bemis and one Oliver Dufoe, upon which two several judgments were recovered, against the makers, before a justice of the peace of Winnebago county, on October 9 and December 11, 1858, for $84.13 and $80.28, respectively, on which executions were issued, and returned *nulla bona,* one, December 24, 1858, the other, January 1, 1859. It was upon these two judgments that the judgment in question was recovered in the circuit court.

At the time of the making of the notes, A. C. Bemis was the owner of about 146 acres of land in Winnebago county. May 23, 1860, Bemis and his wife conveyed these lands by warranty deed to one Harding, of Warren county. In the fall of 1860, Bemis and his family removed to Warren county, and lived there until late in the fall of 1862, when he and his family moved back to Winnebago county.

December 9, 1860, Harding re-conveyed said premises to A. C. Bemis, but the deed was not filed for record until October 2, 1862. October 7, 1862, A. C. Bemis and wife conveyed, by warranty deed, the same premises, except about six acres, to Horace Dyer, for the expressed consideration of $2094.60, and Dyer, in part payment thereof, at the same time, or thereabouts, conveyed to Orissa V. Bemis the 57 $\frac{30}{100}$ acres of land involved in this suit.

On hearing, the court below dismissed the bill, and the complainant appealed.

The only question presented upon the record is, whether such were the pecuniary circumstances of A. C. Bemis at the time, as to make this gift of this land to his wife unimpeachable, as being fraudulent and void as against antecedent creditors.

The value of this land must be taken to have been at that time about $1500, according to Dyer's statement of what, besides this land, he gave for the land he purchased.

Bemis seems to have quit farming in 1858, and to have been afterward much out of health, and engaged in no particular business. Dyer, the brother-in-law of Bemis, with whom the latter and his family stopped for a time after their return from Warren county in the fall of 1862, testifies that, the only property he knew of Bemis having in the winter of 1862 and 1863, after the conveyance of this land, was one horse, and that he furnished Bemis and his family some provisions and supplies that winter.

According to Bemis' own statement and valuation of his property remaining after the time of that conveyance, it would not, at the utmost, exceed $900, and in connection with the whole testimony, it should not be regarded as to exceed $700. It was in such a form, that, after the deduction of what was legally exempt from execution, there would probably be none which would be exposed to the levy of an execution, except two small pieces of land of six and five acres, and these were sold in the spring of 1863, one for $120, and

the other for $75. In the spring of 1863 a house was built upon the 57 acres, for which Dyer furnished materials and labor to the amount of $100 to $200, as part of the consideration of the land Dyer purchased. Bemis had a family of five or six young children. In addition to the two justice's judgments, before spoken of, there had been afterwards three other judgments against Bemis, for quite small amounts, recovered by different parties before justices of the peace in Winnebago county, upon which executions had been returned, no property found.

The general rule is, that a voluntary conveyance, as against pre-existing creditors, is fraudulent in law and void.

Mr. Justice Story, after thus stating the general rule, says, the doctrine requires, or at least may admit, of some qualification in relation to existing creditors, "where the circumstances of the indebtment and the conveyance repel any possible imputation of fraud, as, where the conveyance is of a small property by a person of great wealth, and his debts bear a very small proportion to his actual means." 1 Story Eq. Ju. § 355. In *Hind's Lessee* v. *Longworth,* 11 Wheat. 199, it was said, the mere fact of being in debt to a small amount would not make the deed fraudulent, if it could be shown that the grantor was in prosperous circumstances and unembarrassed, and that the gift to the child was a reasonable provision according to his state and condition in life, and leaving enough for the payment of the debts of the grantor. In *Salmon* v. *Bennett,* 1 Conn. 525, Chief Justice SWIFT, in delivering the opinion, says : "Where there is no actual fraudulent intent, and a voluntary conveyance is made to a child in consideration of love and affection, if the grantor is in prosperous circumstances, unembarrassed and not considerably indebted, and the gift is a reasonable provision for the child according to his state and condition in life, comprehending but a small portion of his estate, leaving ample funds unencumbered for the payment of the grantor's debts, then such conveyance will be valid."

In discussing this subject in 2 Bland, 33, *Kipp* v. *Hanna*, the doctrine is thus laid down : The true rule, by which the fraudulency or fairness of a voluntary conveyance is to be ascertained in this respect, is founded on a comparative indebtedness; or, in other words, on the pecuniary ability of the grantor, at that time, to withdraw the amount of the donation from his estate, without the least hazard to his creditors, or in any material degree lessening their then prospects of payment ; and see *Williams et al.* v. *Banks et al.* 11 Md. 198 ; *Potter* v. *McDowell,* 32 Mo. 369.

Where qualification has been admitted of the general rule that a voluntary conveyance is void as to existing creditors, this is the tenor of authority in that respect. It comes far short of sustaining as valid the transaction in question.

Bemis, instead of being in prosperous circumstances and unembarrassed, was just the reverse. There were not only small judgments existing against him, but they were shown by officer's returns to be uncollectable by the ordinary process of law, so far as justices' executions could reach. The conveyance to his wife was not of only a small portion of his property, but it was of two-thirds of his estate. In his circumstances it can not be viewed as but a reasonable provision for his wife. There was not left ample property for the payment of debts. In considering its sufficiency in this respect, the probable immediate, necessary and reasonable demands for the support of the family of the grantor should be taken into the account, and deducted. Deducting the amount exempt from execution, and allowing for what the immediate necessities of the family of Bemis would reasonably and probably require, there may be said to have been essentially nothing left for the satisfaction of the claims of creditors.

The rule, that every man is bound to be just before he is generous, will not, in the situation this debtor was, tolerate the withdrawal of such a comparative large amount of property as there was here, from the reach of creditors, and placing it in the hands of the debtor's wife. The conveyance of the

land to Mrs. Bemis was directly calculated to delay and hinder the creditors of A. C. Bemis in the collection of their debts, and has had that effect. Bemis must be held to have intended it, and the land should be made subject to the payment of the judgment of appellant, as a prior creditor of Bemis. It is not necessary that it should appear further that any fraudulent intention existed in the mind of Bemis. *Norton* v. *Norton,* 5 Cush. 528 ; *Eddy* v. *Baldwin,* 31 Mo. 62.

The decree must be reversed, and the cause remanded for further proceedings in conformity with this opinion.

*Decree reversed*