RICHARD T. MATHEWS *et al.*

*v.*

JOHN JORDAN *et al.*

1. FRAUDULENT CONVEYANCE—*indebtedness at the time not sufficient to show.* Mere indebtedness as security will not, *per se,* establish that a voluntary conveyance is void, even as to existing creditors, unless the other circumstances of the case justly create a presumption of fraud, actual or constructive, from the condition of the parties, and the direct tendency of the conveyance is to impair the rights of creditors.

2. SAME—*voluntary settlement, retaining means sufficient to pay debts.* A settlement made on a wife or child can not be held fraudulent and covinous from the fact of indebtedness at the time of making the settlement, if the grantor retains sufficient property with which to discharge his debts.

3. Where a father, several years before a conveyance of his lands upon which he resided, to his son, became security upon several notes, amounting in all to about $1600, the principal being perfectly solvent until long after their maturity, and there was no proof whatever that the grantor had any knowledge of the existence of the security debts when he made the conveyance, or of any fraudulent intent on his part, and the grantor retained property sufficient to have paid such debts, and it appeared there was some money paid by the son at the time of the conveyance, and a debt of $1000 of his father assumed by him, and some other debts, which he paid, and that he obligated himself to support his father and mother during their lives, with a possibility of a reverter in case of the death of the grantee without issue, it was *held,* that the transaction had none of the elements of fraud as against the creditors of the grantor.

WRIT OF ERROR to the Circuit Court of Morgan county; the Hon. CYRUS EPLER, Judge, presiding.

Messrs. EPLER & CALLON, for the plaintiffs in error.

Mr. WILLIAM THOMAS, for the defendants in error.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was a bill in chancery, in the Morgan circuit court, exhibited by John Jordan, Silas G. Corey and Joseph Figueira, and James H. Lenton and John Mathews, partners, etc., complainants, against Samuel F. Mathews, Sarah A. Mathews and

Richard T. Mathews, defendants, the object of which was to set aside a certain conveyance of real estate executed by Samuel T. and Sarah A. Mathews to Richard T. Mathews, on the allegation of fraud, complainants claiming as creditors of the grantor Samuel T.

There are apt allegations in the bill showing in what right they severally claim as creditors, and the amount of their several judgments, and it is alleged that previous to the date of their respective judgments, Samuel T. Mathews and Sarah A., his wife, executed a deed to their son, Richard T. Mathews, dated May 18, 1869, duly acknowledged and recorded March 27, 1873, whereby, for the consideration of ten dollars and of natural love and affection for their son, they conveyed to him parcels of land containing two hundred and six acres (describing it), with conditions and reservations as follows: First, that the grantors should remain in possession, and each have a comfortable support and maintenance from the proceeds during their lives.  Second, that in case of the death of Richard without issue, the lands were to revert to the grantors or their heirs.

It is charged in the bill, that the grantors had continued in possession, having their support and maintenance therefrom; that S. T. Mathews had disposed of his personal property, and was largely in debt; that prior to the date of the deed, Samuel T. had disposed of all his personal property, retaining only so much as was exempt from levy and sale on execution, and by the deed conveyed all the real estate of which he was owner.  It is charged this deed is fraudulent as to his creditors, and the prayer was that it be set aside, and the lands described therein be sold to pay complainants' judgments.

Answers, under oath, were put in by defendants, denying all fraud and fraudulent intention in making the deed, stating the true consideration, and the circumstances existing which prompted them to make the deed to their son; that they were advanced in years and infirm, and not capable of making from the premises, which had been their homestead for half a cen-

tury, a comfortable living for themselves; that the son was living with them, and had so lived from his birth; that they had a settlement of accounts, and, on a balance struck, an amount not rendered was found to be due, and to pay this, and to insure a comfortable support, the conveyance was made. All specific charges of fraud are denied, and it is alleged that at the time of making the conveyance, and for a long time after, he, Samuel T., was the owner of several thousand dollars worth of property over and above that conveyed to his son, and over and above all indebtedness owing by him.

Replications were filed, and an amended bill, setting forth the death of Samuel T., alleging that he left no personal property to be administered on, but leaving his widow, Sarah A., and his son, Richard, in possession of the real estate. There was a supplemental bill filed, charging that Samuel T. had no property other than that described in the bill of complaint.

Issues were made up, and the cause referred to the master in chancery to take testimony and report the facts, which duty he duly performed.

On the hearing on the pleadings, and proofs reported by the master, the court decreed that the deed in question to Richard T. Mathews was made to delay, hinder and defraud creditors, and the same was set aside in respect to the rights of complainants, and a sale of the land ordered by the master in chancery. To reverse this decree the record is brought here by Sarah A. and Richard T. Mathews by writ of error, and the errors assigned question the propriety of the decree.

Plaintiffs in error contend the allegations in the bill were not supported by the evidence.

The principal allegations of indebtedness relate to notes executed by one Jesse Donavan to the complainants, respectively, one note executed in 1864, one in 1866, one in 1867, and one in 1868, and for not very large amounts, on all which Samuel T. Mathews was security. For the balances remaining due on these notes the holders obtained judgments against S. T. Mathews, some at the June term, 1874, and others at the

September term, 1874. The notes were made payable twelve months after date, and during that time, and up to the death of Donavan, which occurred some three or four years after the notes were executed, Donavan was considered by every one as perfectly solvent, and so Jordan, one of the complainants, testifies. The whole amount of all these notes in judgment does not exceed five hundred dollars, and S. T. Mathews had every reason to suppose they were all paid by Donavan, who could have paid them at maturity if the holders had not indulged him.

What does the record show the condition of S. T. Mathews was in 1869, at the time he executed the deed in question? These security debts did not amount to five hundred dollars, and he had every reason to believe, and did believe, Donavan had paid them. The proof shows (Jordan, a complainant, being one of the witnesses,) that Mathews was considered as a wealthy farmer, and other witnesses of most respectable character, one of them of the banking firm of M. P. Ayers & Co., in Jacksonville, that in 1873, four years after the execution of this deed, S. T. Mathews had on deposit in their bank subject to his check, more than three thousand dollars, a part of which he drew out in 1873, and had a note, secured by a vendor's lien on real estate in Jacksonville, amounting to about one thousand dollars, in January, 1870, for which the cash was paid in that month by Horace Bancroft. We are not informed of any other debts due by S. T. Mathews at the time this deed was made, except these security debts, and which could have been collected of the principal if proper means had been used. These are the debts set out in the original bill.

During the progress of the cause, complainants took leave to file an amended and supplemental bill, setting up the death of S. T. Mathews, and in which other persons are made complainants, as creditors holding notes on one Hezekiah Craig, on which S. T. Mathews was security. The same considerations apply to the cases set out in the amended bill as in the original bill, and we are satisfied, from a careful examination

of the record, that no fraudulent intent is imputable to either of the parties to this deed of conveyance. Mere indebtedness as security will not, *per se*, establish that a voluntary conveyance is void, even as to existing creditors, unless the other circumstances of the case justly create a presumption of fraud, actual or constructive, from the condition of the parties, and the direct tendency of the conveyance is to impair the rights of creditors; and a settlement made on a wife or child can not be held fraudulent and covinous from the fact of indebtedness at the time of making the settlement, if the grantor retains sufficient property with which to discharge his debts. This is the doctrine of this court as found in *Moritz* v. *Hoffman et al.* 35 Ill. 553, where the English and American authorities are examined and commented on. The same doctrine is recognized in *Emerson* v. *Bemis et ux.* 69 Ill. 537.

There is no proof whatever that S. T. Mathews had any knowledge of the existence of the Donavan debts when he made the deed, and no fraudulent intent is shown in making it; and that he retained property sufficient to pay them if diligence had been used, is abundantly proved, and Donavan was regarded by all as perfectly solvent. The record is barren of any fact or circumstance calculated to impeach the fairness and validity of this deed.

This case has the elements of an actual sale, for a valuable consideration. There was money paid down at the time, a debt of one thousand dollars assumed by the grantee, and some other smaller debts, which, it is not controverted, he discharged, and an obligation assumed to support his father and mother (the grantors) during their lives, and a possibility of a reverter in case of the death of the grantee without issue. The case has none of the elements of a transaction to delay, hinder or defraud creditors by a voluntary conveyance. The equities are with appellants.

The decree was wrong and must be reversed.

*Decree reversed.*

Subsequently, upon an application for a rehearing, the following additional opinion was filed:

Per CURIAM: In this case the first bill filed described judgments to which Mathews was a party, and it appears he was only a surety on the notes upon which the judgments were recovered. Afterwards, another bill was filed against Mathews on a judgment against him and others, and Mathews adopted his answer to the first bill as his answer to this latter bill. On a trial in the court below there was a hearing on both bills, answers thereto, and proofs, etc. The amount of the judgments set out in the first bill was about $500, and in the second bill about $1100, making near $1600 in the aggregate.

In the opinion heretofore filed, the main discussion is upon the facts arising under the bill first filed, and in which the debts are stated to be about $500, and it is there said the facts governing the indebtedness described in the second suit are the same as in the first, but the amount is not stated. We may have been mistaken in saying that $1000 was paid by the son to the father, when the latter conveyed to the former; but it does appear that $10 was paid, and that the father, on a settlement, was indebted to the son in a sum not stated.

On a careful examination of the petition for a rehearing, we are clearly of opinion that this inadvertent misstatement of the facts should in nowise change the conclusion announced in the opinion heretofore filed.

The majority of the court are of opinion that under each bill the decision should be the same, and that there are no grounds for granting a rehearing, and that the decision of this case in this court is correct. A rehearing is denied.

*Rehearing denied.*