Russell et al v. Fanning.

JOHN S. RUSSELL ET AL.

v.

ALTHA FANNING, Adm'x, etc.

1. VOLUNTARY CONVEYANCE—WHEN IN FRAUD OF CREDITORS.—The general rule is that a voluntary conveyance, when the grantor is indebted at the time of its execution, is presumptive evidence of fraud, and a fraudulent intent will be presumed from the fact that the party conveying was indebted at the time the conveyance was made, and as to pre-existing creditors every conveyance not made on a consideration valuable in law, is void. The want of a valuable consideration is only presumptive evidence of fraud, and may be rebutted by evidence to the contrary.

2. ADVANCEMENT TO CHILDREN—WHEN FRAUDULENT—RULE.—The

Russell et al v. Fanning.

rule by which the fraudulency or fairness of a voluntary conveyance to children is ascertained, is based upon a comparative indebtedness, or on the pecuniary ability of the grantor, at the time of the conveyance, to withdraw the amount of the donation from his estate without the least hazard to his creditors, or in any material degree lessening their prospects of payment. This general rule is subject to the exception, however, that it may be shown that the grantor was in prosperous circumstances, and unembarrassed; that the gift to the child was a reasonable provision according to his state and condition in life, and enough is left for the payment of the debts of the grantor.

3.  PRACTICE—ISSUE OUT OF CHANCERY—FINDING BY JURY—NOT CONCLUSIVE.—In the trial of a feigned issue out of chancery, the chancellor may act upon or reject the finding of the jury, and have it re-tried or proceed with the trial and find the issues himself, and the evidence may be considered and the verdict of the jury reversed in the appellate court, the same as though there had been no trial of a feigned issue by the jury.

APPEAL from the Circuit Court of Morgan county; the Hon. CYRUS EPLER, Judge, presiding.

Messrs. KETCHAM & HATFIELD, and Mr. T. G. TAYLOR, for appellants.

Messrs. EPLER & CALLON, Mr. OSCAR A. DeLEUW and Mr. H. G. WHITLOCK, for appellees; that oral evidence may be admitted to enlarge the consideration in a deed, cited Murray v. Smith, 1 Duer. 412.

That the acknowledgment of a consideration in a deed is *prima facie* evidence of its payment, as against any person impeaching it collaterally: Thalhimer v. Brinckerhoff, 6 Cow. 90; Jackson v. McChesney, 7 Cow. 360; Carpenter v. Freeland, Lalor, 37.

A bill of exceptions cannot be taken on the trial of a feigned issue out of chancery, but if at all, only on a motion for new trial: 2 Daniel's Chancery Pr. 1305; Johnson v. Harman. 96 U. S. 372; Ex. Parte Story. 12 Pet. 343.

There was no error in dismissing the bill: Jordan et al. v. Matthews et al. Supreme Court of Illinois, Jan. T. 1878.

LACEY, J.  The bill in this case sets out that on the 15th Sept., 1869, Sampson, Wm. and Samuel A. Fanning executed

to Andrew Russell, agent of complainants, their promissory note for $2,097, due in one year from date, and on the 8th day of March, 1871, their other note to same payee, due in 18 months from date, each bearing interest at the rate of ten per cent. per annum, for $9,000. That at the time of the execution of said notes, Samuel Fanning was the owner in fee of the following described real estate, to wit: (1.) N. W. ¼ Sec. 9, No. 13, N. R. 10 west, 160 acres; (2.) N. E. ¼ sec. 9, same town and range; (3.) W ½ S. E. 9, same town and range, 80 acres; (4.) N. end E. ½ N. W. Sec. 35, 13, 18; (5.) N. W. N. E. 6, T. 13, N. R. 9—all of which was unincumbered.

That on Aug. 23, 1871, Sampson Fanning and wife executed a deed of trust to Morrison & Dodd to secure payment of note of that date for $2,000 on the W. ½ N. W. ¼ Sec. 9, T. 13, R. 10; note to become due Aug. 25, 1874.

That Nov. 25, 1871, the said Sampson Fanning borrowed of Hiram K. Jones $4,000, and he and his wife executed their mortgage to secure the same on the E. ½ N. W. Sec. 9, T. 13, R. 10, and W ½, N. E. 8, T. 13, R. 10; note due three years after date.

That on the day following, said Sampson Fanning and wife (Nov. 24, 1874,) executed their several deeds of conveyance to their respective sons as follows: (1.) To George W. and Wm. F. Fanning for N. W. 9, T. 13, R. 10, and 54 acres off of E. side of the E. ½ N. W. 8, same town and range, consideration mentioned in deed as follows: cash in hand $1,000 and $12,000 deferred payments. That $6,000 was made up of the two above-named mortgages and the other $6,000 in four notes each, $1,500, due 24th Nov., 1876; that the four notes were payable to his daughters, Anne Creswell, Mary E. Phelps, Matilda J. Spencer and Margaret R. Reaugh; deed called exhibit "A." (2.) To Wm. F. Fanning 53 acres off of the north end W. ½, S.E. Sec. 9, T. 13, R. 10, and N. end east half N.W. Sec. 35, in T. 13 R. 10; also N. W. N. E. for ¼ Sec. 6, T. 13, R. 9, and Lot 4, B. 7, in Chamber's Addition to Jacksonville, for the pretended sum of $3,500; deed marked Exhibit "B." (3.) To Andrew J. Fanning, the W. ½, N.E. 8, and 26 acres off of the W. side, E. ½ N.E. Sec. 8, and 27 acres off of the S. end

of the W. ½, S. E. ¼, Sec. 9, T. 13, R. 10, for the pretended sum of $3,500—called Exhibit " H." A vendor's lien was reserved in this deed to secure two notes of $1,500 each, to his two daughters, Sarah A. Fanning (now Donald), and Caroline Fanning—said notes also due five years from date. That at the time the said Wm. and Samuel A. Fanning, who signed the said Russell notes with Sampson Fanning, were insolvent, that the said Sampson Fanning, at about that time, disposed of all his personal property, so that he was entirely insolvent.

The bill charges the lands were worth $16,000; that each of the above conveyances were made without any valuable consideration, in fraud of complainant's rights. That the deeds were not recorded till March 6, 1873.

That on June 9, 1874, complainant recovered judgment in the Morgan county Circuit Court against Sampson, Wm. and Samuel A. Fanning for $8,057.90; that in 1874, execution was issued thereon and returned " no property found." That on Dec. 8, 1874, the lands embraced in the Morrison and Dodd mortgage were sold and purchased by Andrew Russell. That the mortgage executed to Jones was in process of being foreclosed. That the said deeds were executed to his children as advancements, and without valuable consideration, and were fraudulent and void. Prays that said lands be subjected to sale for the payment of said judgment, subject to the Jones mortgage.

Defendants Sampson, Altha and George W. Fanning, and Wm. F. and Andrew J. Fanning, answer, admitting most of charges as to the judgment and deed, and charge that the interest on said notes to the daughters of Sampson Fanning was annual, and made payable to the latter. Setting up that there was an incumbrance on said land by mortgage to Eliza Thomas for $1,650. That said George W. and Wm. F. paid it off in pursuance of the contract of purchase between them and their father. Aver that they, G. W. and Wm. F., paid to Sampson Fanning $5,000 cash, and assumed the $6,000 in the Morrison and Dodd and Jones mortgage, and $9,000 note.

That on Dec. 8, 1874, the W. ½, N.W. ¼, S. 9, T. 13, R. 10, was subject to purchase made by Sampson Fanning for George and

Wm. Fanning, on Nov. 18, 1850, and by purchase from Sampson Fanning, Nov. 1, 1861, and subject to their peaceable possession since Nov., 1861, and payment of taxes since 1863; charge that George W. and Wm. F. Fanning have paid $9000 of the indebtedness on the trust deed and mortgage, and grantees in said deed have paid all the taxes since for ten years on 400 acres of said land since 1863.

That originally and at the time Sampson Fanning purchased said lands, George W. and Wm. F. furnished about one-half the money that purchased said lands.

That George W., Wm. and Andrew J. Fanning worked on said lands for a number of years in improving the same, with a verbal understanding and agreement that at some future time that Sampson would convey in fee, as compensation for such money and labor, to each of the respondents, George W., Wm. F. and Andrew J. Fanning, an 80-acre tract of said land; accordingly each one took possession of an 80-acre tract of said land: George, of his, in Dec., 1854; Wm. in Nov., 1861; Andrew, in March, 1869; and since then each one has had undisturbed and continuous possession, with the necessary acts of ownership, etc.

The answer of James M. Epler avers that the notes to Sarah A. and Caroline Fanning are signed by Andrew J. Fanning. That the notes to the other daughters are signed by George W. and William Fanning; that all the notes draw ten per cent. interest, payable annually to Sampson Fanning, and are all secured by vendor's lien on the real estate described.

That the notes payable to Caroline, Sarah, Mrs. Phelps and Mrs. Reaugh, were indorsed to him for value received, and that he is a holder without notice of fraud or collusion.

The court below made up an issue out of chancery, and submitted the question to the jury to find what the consideration of the several deeds were, and whether Sampson Fanning, at the time of the conveyances, had other property sufficient to pay his debts.

After trying the issue, the jury found as to "Exhibit A," the deed by Sampson Fanning and wife to George W. and Wm. F. Fanning, that the consideration was $1,000, cash and four notes

of $1,500 each, being $6,000. That as to "Exhibit B," executed by the same grantors to Wm. Fanning, the consideration was cash $1,300, and cash of George Fanning, $583.

That as to "Exhibit H," the deed by same grantors to Andrew J. Fanning, the consideration was, cash $500, and two notes, $1,500 each; and the jury found that at the time the said conveyances were executed (Nov. 24, 1871,) Sampson Fanning had other property sufficient to pay his indebtedness. The evidence shows, and in fact there is no dispute but that the notes referred to in the finding of the jury, were the same notes executed by the Fanning sons to their sisters, set out in the pleadings.

The testimony of all goes to show that these notes were intended as an advancement to them by their father, and was to be their distributive share of the estate. It will appear that the consideration mentioned in all the deeds was $20,000; taking from this amount the notes given to the six daughters and the Morrison and Dodd & Jones mortgages, in all $15,000, and there remains $5,000, which would be $500 more than enough to give each one of the sons $1,500 each.

In all probability this was about the division of the estate that was intended to be made, for it would hardly be supposed that Sampson Fanning would cut off the three sons without anything. Yet it is contended that all this balance was paid by the sons and no portion given to them. All the circumstances of the case are opposed to such a claim. Sampson Fanning only reserved to himself the interest on the notes intended for his daughters for five years and until his death. The consideration named in the deed, exhibit "A," is $13,000. This, it is asserted, is made up of four $1,500 notes assumed to be paid to the daughters, the Jones mortgage of $4,000 and the Morrison and Dodd trust deed of $2,000, and one thousand in cash. The $1,000 George W. Fanning claims to have paid to Eliza Thomas, who held a mortgage on one portion of the land, and insists that it was his father's debt, and that his father accounted to him for it in the settlement for the land described in deed "A."

James Thomas, husband of Eliza Thomas, testifies positively

that this money was loaned to George W., and was the latter's own debt, and that in discharging it he only paid his debt. Sampson Fanning was only indorser on the note. At one time Thomas demanded security on the note, when Sampson Fanning replied that he was very willing to secure it; that he had a piece of land he intended to give the boys, and he would just put it in and secure the debt.

It appears, then, that no valuable consideration was paid for this deed by George W. and William F. Fanning. The Morrison and Dodd mortgage and the Jones mortgage were satisfied by the sale of the land on which they were respectively secured, as appears from the evidence.

The claim set up by George W., Wm. F. and Andrew J. Fanning, that many years ago they had advanced money and done work on portions of the land, and that each had been promised an 80-acre tract, and had taken possession of portions of the land each, seems to be disproved by the testimony of George W. himself; that at or about the time the above conveyances were made the Mill Co. owed Sampson Fanning about $6,000, which was discharged by offsetting their claim for advances on the land. This witness claims that it did not enter into the considerations of the deeds. Evidently it did not. The jury finds in case of Exhibit "B," the consideration to be $1,300 cash, paid by George W. Fanning out of the $3,500 claimed.

We are satisfied from the evidence that the jury did right in rejecting such claim. They only did not go far enough, and reject the balance. The money item "Cash of George, $583," is a portion of the money claimed by George to have been paid on the Thomas indebtedness, which was his own debt. It will be seen that this item could not have been turned, as claimed by George W. as a debt against Sampson Fanning, for the reason that he did not owe it, and could not accept it as payment from Wm. F. Fanning by giving credit to George W. on the Thomas account, leaving Wm. F. to pay George.

The evidence fails also to show that the item of $1,300 was paid by George for Wm. as claimed. The evidence of George on that point is vague and uncertain, and he is unable to give any satisfactory account of it. Cyrus Fanning, who took the

acknowledgments of the deeds, and for some two hours after heard a good deal of talk about the matter, neither heard anything about the payment of money or saw any paid. No other witness testifies to or knows anything about it. Not one of the family testifies to it but him. He has been mistaken in other material points in his evidence, and is more than likely mistaken in this. Wm. F. is not called to testify to this payment, who ought to know if he made it.

The only remaining deed is "Exhibit H," executed to Andrew J. Fanning. The jury find that $500 in cash and $3,000 in the notes were paid for that. The only evidence to show the payment of this $500 is the evidence of George W. Fanning, who swears it was paid by his brother, but did not see it done, and cannot or will not tell how he knows it was paid. He is wholly uncorroborated by Andrew, who might have been a witness, or by any one else.

This land has been all conveyed wholly without any valuable consideration. The finding of the jury that the debtor, Sampson Fanning, had remaining enough property to pay all his debts, we do not regard as being warranted by the evidence. It is true he had some personal property left, but not near enough to pay the debts against him, even the unsecured ones, and all his personal property was given to his children the next spring after these conveyances, which left him without any means save his money borrowed of Jones, if he had any. When he died in September, 1876, he had no property and was utterly insolvent. The doctrine as to voluntary conveyances as against pre-existing creditors, laid down by the Supreme Court of this State, is that all such conveyances are void. The general principle is that a voluntary conveyance, when the grantor is indebted at the time of its execution, is presumptive evidence of fraud; and a fraudulent intent will be presumed, from the fact that the party conveying was indebted at the time the conveyance was made, and as to pre-existing creditors every conveyance not made on a consideration valuable in law is void. This general rule is subject to some exceptions. If it be shown that the grantor was in prosperous circumstances and unembarrassed; that the gift to the child was a reasonable

provision according to his state and condition in life, and leaving enough for the payment of the debts of the grantor, the want of a valuable consideration is only presumptive, not conclusive evidence of fraud. It may be met and rebutted by evidence on the other side. Moritz v. Hoffman, 35 Ill. 553. The true rule by which the fraudulency or fairness of a voluntary conveyance is to be ascertained in this respect is founded on a comparative indebtedness, or in other words, on the pecuniary ability of the grantor at that time to withdraw the amount of the donation from his estate without the least hazard to his creditors, or in any material degree lessening their prospects of payments. Kipp v. Hanna, 2 Bland, 33. This doctrine was approved by the Supreme Court in the case of Emerson v. Bemis et al. 69 Ill. 537. The court say: " where qualification has been admitted of the general rule that voluntary conveyances are void as to existing creditors, this is the tenor of authority in that respect." See, also, case of Matthews v. Jordan, Jan'y term, 1877, record page 280 of Supreme Court, Springfield.

In this case the debt of complainants existed to the amount of seven thousand dollars. The debtor had property not to exceed two or three thousand, consisting of farm implements and stock on farm, and the $4,000 in cash obtained of Jones. The $2,000 obtained of Morrison & Dodd had gone into the mill. The $4,000 was being used up for his living; most of complainants' debt had more than a year to run before due. This of itself shows that it was morally certain that the complainants' debt could not be paid out of what would remain. The debtor, Sampson Fanning, was getting old, and about to retire from active business.

Besides there were the mortgage debts amounting to $6,000, upon all of which he was personally liable. Clearly these conveyances cannot be upheld under any of the exceptions laid down as a rule by the courts.

It is claimed, however, that there is no proof that Wm. and Samuel A. Fanning, the principals on the complainants' notes, were insolvent. The return on the executions show that they have been insolvent ever since judgment was rendered in favor

of complainants; besides, under the rule laid down by the Supreme Court, if it is desired to bring this cause within the exception, it devolves upon the other side to show that they were solvent.

It is insisted that the court below was bound by the finding of the jury on the feigned issue unless appellants had made motion to set it aside and to grant a new trial, and that this court cannot review the findings of the jury unless such motion were made and exception taken to the overruling of the motion. That is not the rule in this State. All the evidence before the jury is heard in open court; the judge hears it as well as the jury. "In this State the practice has been for the Chancellor in all cases where there has been a trial of a feigned issue, to act upon it or reject it, and have it re-tried, or disregard it and proceed with trial and find the issues himself." Meeker et al. v. Meeker, 75 Ill. 261. The evidence and the verdict of the jury may be reversed in this court, the same as though there had been no trial of a feigned issue by the jury.

The notes due the six daughters were an advancement, and as we have seen, fraudulent and void as against complainant's claim, and while in the hands of the original payees, or of Sampson Fanning, or an indorsee with notice, or without value, they might be defended against by the makers in case the consideration failed; and hence the makers could not set up a valuable consideration for the conveyances in the signing of these notes.

If they passed into the hands of innocent holders, so as to make them liable on the notes, at all events they then might be regarded as having paid value for the conveyances.

James M. Epler sets up in his answer that he is such holder without notice for value. His own evidence shows that as to four of the notes, he received them on the 6th of March, 1875 (this suit was commenced March 29, 1875); that he at the time paid nothing for the notes. They were given, he claims, to secure him in raising money to pay off the Jones mortgage. He has never paid off the mortgage, but purchased the land at sale under decree of foreclosure, Aug. 14, 1875, thus leaving the note in his hands as holder, without consideration at that time.

The other two notes were not in his possession at the time

this suit was commenced. What he may have done since with the notes could not affect the rights of complainants, nor affect their priority of lien on the land. We therefore think that the decree in this case ought to be reversed and the cause remanded; that decree should be rendered in this case setting aside the conveyances marked Exhibits " A," " B " and " H," so far as the rights of complainants are concerned; that the land and lots should be sold subject to the incumbrance of the Jones mortgage, and to the rights of those claiming under the foreclosure proceedings in relation to said mortgage, and except the land sold under the Morrison & Dodd trust deed. That the vendors' liens retained for the benefit of the six notes spoken of as given to the daughters of Sampson Fanning, should be postponed to the rights of complainants. The court below is therefore ordered to proceed in accordance with this opinion.

Decree reversed and cause remanded.