ALTHA FANNING *et al.*

*v.*

JOHN S. RUSSELL *et al.*

1. APPEAL—*when it lies from Appellate Court.* Where the judgment of the Appellate Court is such that no further proceedings can be had in the circuit court, except to carry into effect the mandate of the Appellate Court, and the litigation involves a freehold, an appeal lies to this court from the judgment or decree of the Appellate Court.

2. PRACTICE IN SUPREME COURT—*reviewing facts found by Appellate Court.* The provision in the Practice act making the findings of fact by the Appellate Court conclusive on error or appeal to this court, has no application to chancery cases; and it is the duty of this court to review the evidence as to the facts found which constitute the basis of the decree.

3. CHANCERY PRACTICE—*trial of feigned issue.* Where a doubtful question of fact arises, it may be referred to a jury on a feigned issue. The verdict in such case is to satisfy the conscience of the chancellor, and if he is not satisfied, he may disregard it, and either direct a new trial or find the facts himself. This is the practice in the courts of England as well as in our courts.

4. If a party is not satisfied with the verdict of the jury, on the trial of a feigned issue out of chancery, he should make his objections at the earliest possible opportunity, and in the court in which the error has intervened; and if he makes no objection in the court below, he will be regarded as acquiescing in the finding of the facts.

5. FRAUDULENT CONVEYANCE—*when grantor retains enough to pay his debts.* A voluntary conveyance of lands by a father to his sons, by way of advancement, will not be fraudulent as to creditors of the father, if he retains ample means and property to pay all debts and liabilities.

6. GIFT—*taking notes in child's name is not a gift.* The taking of a note by a father in his daughter's name as payee, with the intention of making a gift to the daughter, gives the latter no vested interest in the note before its delivery to her, but it will remain the absolute property of the father.

WRIT OF ERROR to the Appellate Court for the Third District; the Hon. CHAUNCEY L. HIGBEE, presiding Justice, and Hon. OLIVER L. DAVIS and Hon. LYMAN LACEY, Justices.

Messrs. EPLER & CALLON, Mr. OSCAR A. DE LEUW, and Mr. H. G. WHITLOCK, for the plaintiffs in error.

Messrs. KETCHAM & HATFIELD, and Mr. T. G. TAYLOR, for the defendants in error.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

This bill was filed by the creditors of Sampson Fanning, since deceased, to subject certain lands, which it is alleged he owned at the time their indebtedness was contracted, to its payment. In the original bill the amount of such indebtedness, when contracted, and the lands owned by the debtor at the time, are all set forth with sufficient definiteness. As a ground of relief, it is alleged the conveyance of the lands by the debtor to his sons, after the indebtedness was contracted, was fraudulent as to the grantor's creditors; that such conveyances were made for a pretended, and not a valuable, consideration, for the purpose of alienating all his real estate liable to the debt owing to complainants, and that such conveyances were in the way and insurmountable embarrassments in making a successful levy and sale of such lands under execution on the judgment complainants had recovered against the grantor in his lifetime; and the prayer of the bill was, that such conveyances be set aside, and that the lands not included in the trust deed to Morrison and Dodd, nor embraced in the mortgage to Jones, be sold, or so much thereof as may be necessary to satisfy the judgment in favor of complainants.

Afterwards, the bill was amended so as to contain an allegation that all the lands in the original bill described were conveyed by Sampson Fanning, his wife, Altha, joining with him in the execution of the deeds, to the grantees mentioned

in the original bill, all of whom were his children, as and for advancements, and were voluntary and without any valuable consideration, while the debt of complainants was outstanding and unpaid; that such advancements by Sampson Fanning were made by the conveyances in the original bill set forth, and complainants prayed for the same relief as in the original bill. The answers of defendants contain specific denials that such conveyances were either fraudulent or made as advancements to the grantees from their father, but allege such conveyances were for valuable considerations, setting forth in what such considerations consisted. It was upon the issues made on the amended bill the cause was tried, and the insistment on the argument is, that each of the conveyances set forth in the bill was voluntary, and that they, together with the making of the notes to the sisters of the grantees, constituted a part of a plan or scheme by which to distribute the estate of Sampson Fanning among his children, while the debt due complainants remained unpaid.

An issue out of chancery was ordered by the circuit court on the pleadings in the case, and two distinct questions submitted:

1. Were the foregoing deeds of conveyance made without any valuable consideration? If with such consideration, what and how much with reference to each deed?

2. Did Sampson Fanning, at the date of making such conveyances, own other sufficient property to pay his indebtedness then existing?

The jury, to whom these issues of fact were submitted, found each conveyance was for a valuable consideration, stating in detail of what such consideration consisted and how paid, whether in money or notes; and further found that Sampson Fanning had, at the time of the conveyances in question, other property sufficient to pay his indebtedness. On the coming in of the verdict some additional testimony, to that taken before the jury, was taken, and the circuit court, on the final hearing, dismissed the bill. On complainants'

appeal that decree was reversed by the Appellate Court, with directions to the circuit court to enter a decree granting the relief asked by complainants in their bill. As the judgment rendered was such that no further proceedings could be had in the court below, except to carry into effect the mandate of the Appellate Court, defendants bring the case directly to this court on error, as they have a right to do under the statute—a freehold being involved in the litigation.

A preliminary objection is taken, that the Appellate Court having found the facts stated in its opinion, such finding, under the Practice act, is conclusive, and is not the subject of review in this court. Since this cause was submitted, the sections of the Practice act cited have been the subjects of construction by this court, and it has been held they have no application to chancery cases; and it is now, as was the former practice, the duty of this court to review the evidence as to facts found which constitute the basis of the decree.

There being no controversy that complainants were creditors of Sampson Fanning at the date of the conveyances mentioned, it is apparent, and the concession of counsel is to that effect, that the case turns wholly on questions of fact, viz: whether the conveyances of the lands involved by Sampson Fanning and his wife to his sons were voluntary and without valuable considerations, and whether Sampson Fanning, at the time of such conveyances, had other property sufficient to pay his debts then outstanding. Whether Epler is the holder for a valuable consideration of the notes given in part payment of the lands conveyed, is not material to the decision in the view we have taken of the case.

The precise questions of fact indicated, as we have seen, were submitted to a jury on a feigned issue out of chancery, and the verdict finds the conveyances all had for their support, not only a valuable consideration, but, if true, what seems to be an adequate consideration, and that the grantor, after making such conveyances, retained other property sufficient in amount to pay all his existing indebtedness. That

finding, together with some testimony subsequently heard, but of no great importance, was made the basis of a decree dismissing the bill. The facts, if well found by the jury, would fully warrant the decree and would effectually bar all relief. The correctness of the finding of the jury as to the facts on the evidence presented to them, does not seem to have been challenged by complainants in the circuit court, either by a motion for a new trial on the issues submitted, or by any exception to such finding, in analogy to an exception to the master's report finding facts on evidence taken before him. Omitting to call in question the correctness of the verdict on the feigned issues tried on the law side of the court,—will the unsuccessful party be deemed to have acquiesced in such finding, or may he, for the first time, in the Appellate Court, insist the facts were incorrectly found—are questions pressed on our attention.

When any question of fact arises in a chancery case which the court considers doubtful, it may be referred to a jury on a feigned issue. According to the practice in the English courts of chancery, the verdict in such cases is to satisfy the conscience of the chancellor, and if he is not satisfied he may disregard it, and either direct a new trial or find the facts himself. The same practice obtains in our courts.

In the case before us the court was satisfied with the verdict, and seems to have made it the basis of a decree dismissing the bill. The rule upon this subject, as stated in the text books, is that if a party against whom a verdict is found is dissatisfied with it, and wishes a new trial, he must make an application for that purpose to the court that directed the trial. The reason assigned for the practice by the chancellor, in *Blootte* v. *Blundell*, 19 Ves. 500, is, that upon an issue directed, the court reserves to itself the review of all that passes at law; and as was further said, one principle on which the motion for a new trial must be made in the court that directed the trial, is that such court regards the judge's report with a view to determine whether the information col-

lected before the jury, together with that which appears on its record, is sufficient to enable it to proceed satisfactorily, to which it did not conceive itself competent previously.

In Daniell's Chancery Practice,—a work of acknowledged authority—in discussing motions for new trials on feigned issues, it is said: "Upon the trial of an issue a bill of exception for an alleged misdirection of the judge will not lie, but the regular course is to apply to the court which directed the issue, for a new trial." 2 Dan. Ch. (1 Am. ed.) 1305. English cases cited in the margin support the text. American decisions are to the same effect. It was said, in *Johnson* v. *Harmon*, 94 U. S. R. 271, "A bill of exceptions can not be taken on the trial of a feigned issue directed by a court of equity, or if taken, can only be used on a motion for new trial made to said court." On the hearing, it is the duty of the court, as stated in the case last cited, to decide upon the whole case, pleadings, evidence and verdict, giving to the latter so much effect as it is worth, and, it is added, an appeal from such decree must be decided in the same way. It is plain, therefore, that so long as the verdict stands unchallenged and has the approval of the court, it tends to support the decree and may go far to maintain it. This proposition has for its support both authority and reason. It is the conclusion of the jury upon questions the chancellor considered doubtful, and as to which, without the verdict, he did not conceive himself competent to proceed previously. There is still greater reason why it should be regarded as establishing the facts, before then considered doubtful, when the case is heard on appeal, for it is not only the conclusion of the jury, but it has the sanction of the court before whom the issue was tried. It is a reasonable rule, if the party against whom a verdict has been found has anything to say against its correctness, he shall be required to do it at the earliest possible opportunity, and in that court where the error, if any has intervened, can be best and most speedily corrected;

otherwise he ought to be understood as acquiescing in the findings of the facts.

But aside from all consideration due to the verdict, when it has not been called in question in any appropriate mode known to the practice, by the unsuccessful party, the finding of the jury as to the principal facts in the case at bar is well sustained by the testimony. One issue made by the pleadings was whether the several conveyances made by the debtor to his sons were mere voluntary conveyances as and for advancements. That question was definitely submitted to the jury, who found that each conveyance was made upon a valuable consideration, stating of what that consideration consisted.

On looking into the evidence, we entertain no doubt that fact was well found. Aside from the cash payments, which were quite considerable, if the testimony is to be believed, and the jury seem to have regarded it as worthy of belief, it is proven the grantees assumed to pay the incumbrances resting on the lands conveyed to them in the sum of $6000, and executed their negotiable notes bearing interest at the rate of 10 per cent per annum, for the sum of $9000, for the residue of the purchase money. Assuming that the grantees would pay the incumbrances on the lands, as they were obligated to do, and pay their notes given for the residue of the purchase money, which was secured by vendor's lien on the lands, the amount agreed to be paid for the lands is not far from an adequate consideration. These facts are not matters of controversy, and in view of them, it is not perceived how it can be maintained these were mere voluntary conveyances, made upon no valuable considerations. As that is the theory on which the bill in this case is framed, it is not in this regard sustained by the proof.

As respects the other fact found, viz: that Sampson Fanning, after making such conveyances, had other property sufficient to pay his existing indebtedness, it seems to be fully sustained by the testimony. It is shown he had the cash payments made by the grantees, whatever they were; also,

the $4,000 obtained on the Jones mortgage, and whatever, if anything, that remained of the $2000 received on the Morrison & Dodd trust, besides a considerable amount of other personal property. The notes given for the lands conveyed to the sons and made payable to the daughters, all bore interest which was made payable to Sampson Fanning, a large amount of which, we understand from the evidence, was in fact paid.

It is true, notes taken to secure the purchase money of the lands were made payable in sums of $1500 to each of the grantor's six daughters, but the testimony of George W. Fanning, a witness called by complainants, is "those notes were delivered to my father—all of them at that time. They were not delivered to my sisters." No doubt it was the intention of the father that his daughters should each have the benefit of one of the notes, that is, the principal, the interest being made payable to him, but so long as he retained the possession of such notes they were his own property, notwithstanding they were made payable to his daughters. Until the notes were delivered it was his privilege to change his purpose and withhold the gifts he may have intended to make. The daughters had no vested interest in the gifts their father may have proposed to make them, and of course could not compel a specific performance. It does not appear the notes were ever delivered to the beneficiaries named, by the father holding them. It is certain four of them were not. So long, therefore, as Sampson Fanning retained these notes in his possession, they were absolutely his property, and that was certainly long after the conveyances were made. Assuming, as we may rightfully do, that the notes given for the residue of the purchase money of the lands conveyed belonged to the grantor, as they certainly did until he chose to part with them, they, with other property and money which it is abundantly proven he had after the conveyances, constituted a fund amply sufficient to pay all of his indebtedness then existing. What this grantor may have proposed to do with the notes given to secure the purchase money of the lands was a matter of no

concern to the grantees. As to them, there was no failure of consideration, and their obligation to pay the notes was absolute, whether in the hands of the payees or Sampson Fanning, or in the hands of any assignee.

The judgment of the Appellate Court will be reversed, and the cause remanded to that court, with directions to affirm the decree of the circuit court.

*Judgment reversed.*