GEORGE S. ROGERSON *et al.* Admrs.

*v.*

GEORGE W. FANNING *et al.*

*Filed at Springfield November 10, 1896.*

APPEALS AND ERRORS—*Supreme Court will not disturb finding of fact upon conflicting evidence.* The Supreme Court will not, upon a chancery appeal, reverse a decree of the trial court upon an issue of fact and divest the title of real estate upon evidence that is conflicting and unsatisfactory, although not fully convinced of the correctness of the decree.

APPEAL from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding.

MORRISON & WORTHINGTON, for appellants.

W. P. CALLON, and G. W. SMITH, for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

The history of this litigation may be found in *Russell v. Fanning,* 2 Ill. App. 632, *Russell v. Epler,* 10 id. 304, *Fanning v. Russell,* 21 id. 220, *Fanning v. Russell,* 94 Ill. 386, *Rogerson v. Fanning,* 38 Ill. App. 265, and *Fanning v. Rogerson,* 142 Ill. 478.

Substantially the only question on this appeal is, did the Fannings consent, in fact, to the decree entered in the cause on the 25th day of September, 1885? On its face the decree purported to be by consent, in open court, of Epler, the complainant, and of these appellants or their predecessors, defendants to the bill and complainants in the cross-bill, but only by default as to appellees, George W. and William F. Fanning, who were defendants to both the bill and cross-bill and who claimed to be the owners in fee of the property affected by the decree.

By the previous litigation, culminating in the final decision by this court in 94 Ill. 386, it had been finally adjudged that the title to the lands in controversy was vested in the Fannings, and that the conveyance to them

by their father was not fraudulent and void as against his judgment creditor, Andrew Russell, appellees' predecessor in the litigation. The decree above mentioned, called in the record the "consent decree," among other things disregarded this adjudication and the rights of the Fannings in the land, set aside the deeds of their father to them and ordered the lands sold to pay the Russell judgment. On appeal this decree was reversed by the Appellate Court because it did not appear by the decree itself that appellees, whose rights to the lands were divested by the consent decree, ever consented to such decree. (21 Ill. App. 220.) When the case went back to the circuit court appellants filed a supplemental cross-bill, setting up, among other things, that appellees did in fact consent to the decree and that the same was entered in pursuance of an understanding and agreement of all the parties in interest, including appellees, but that by the mere mistake of the draughtsman of the decree the consent of appellees did not appear, and the prayer was that the consent decree be affirmed as valid and binding and the title to the one hundred and thirty-four acres be established in Russell, etc. The circuit court sustained a demurrer to this supplemental cross-bill, but this decree was reversed by the Appellate Court and the cause was again remanded. (38 Ill. App. 265.) After the cause was re-docketed in the circuit court the supplemental cross-bill was amended, and the appellees answered denying that they ever consented to the decree and claimed title to the property. Issue was made and the cause tried on depositions and oral and documentary evidence, and a decree rendered in favor of appellees and dismissing the cross-bill. This appeal is brought to reverse that decree.

It was alleged, among other things, in the cross-bill, that a sale of the property was made under the consent decree before it was reversed and that Russell bought the land in controversy, but it was stipulated that he

paid no part of his bid, and that his judgment showed no credit upon the records, and that no deed was ever made to him by the master. It was also alleged in the cross-bill, that in pursuance of the understanding and settlement Elizabeth Fanning, wife of appellee G. W. Fanning, obtained by purchase at the sale the twenty-seven acre tract and a sufficient amount of the purchase money derived from the sale of other tracts not a part of the one hundred and thirty-four acres to make $1900, she merely taking the place of her husband for reasons not disclosed,—presumably because of his insolvency,—and that Fanning's attorneys were also paid for their services rendered in the litigation out of the proceeds. These and other circumstances tending to show that appellees had knowledge of the settlement, acquiesced in it and accepted benefit from it, were alleged, from which it was claimed an equitable estoppel arose, and that appellees should not be permitted to repudiate the transaction whether they in fact consented to it in the first instance or not.

The questions are principally questions of fact. The cause was in part heard upon oral testimony, and the learned chancellor of the circuit court was in a better position than we are to ascertain the very truth of the matter. We are, however, by no means convinced of the fairness of the transaction on the part of appellees. It may, however, be said, that it is not necessary that we should be. The burden of proof was on appellants to prove the allegations of their cross-bill, and unless they have done so the decree must be affirmed, notwithstanding appellees may not have availed themselves of the opportunity presented on the trial of relieving themselves from the appearance of having taken an inequitable advantage of their adversary in the litigation. It is a circumstance in favor of appellees, tending to show that they did not consent to the decree, that while on its face it appears to have been entered by consent of complain-

ant Epler and defendant Russell, it was only by default as to appellees, and no contract, agreement or writing of any kind signed by them or on their behalf was ever made. Besides, the record does not show that they then had any counsel in the case. At a former period they joined with Epler, and by the same counsel, in a plea of *res judicata* to appellants' cross-bill, but when this issue was finally adjudged against them by the Appellate Court they filed no answer, but the consent decree followed, which recited their default. It is certainly true that the circumstances tend very strongly to show that, as between Epler and the Fannings, the litigation was a friendly one and that they needed no separate counsel. Indeed, it may be said that as they had no defense against the vendor's lien sought to be enforced by Epler, their only concern was the same as Epler's,—to defeat the cross-bill of Russell,—and they may have relied upon Epler to accomplish this purpose. It is true, the contention is made, and not without reason and evidence in its support, that Epler never owned the notes secured by the vendor's lien, but that the assignment to him was only colorable and intended to defeat Russell in the collection of his judgment. It had been adjudged that these notes assigned to Epler originally belonged to appellees' father, Sampson Fanning, who was Russell's judgment creditor, as a part of the consideration which he received from them for the land, and not to the daughters to whom the notes were made payable, and that Russell was not precluded by the final adjudication against him that the sale of the land to the sons by his judgment creditor was not fraudulent and subject to be set aside, from insisting that these notes, if they still belonged to his judgment creditor, should be appropriated toward the satisfaction of his judgment. But it does not appear, from the evidence, that appellees had any interest in the question between Epler and the Russells as to which one of them should have the proceeds of the notes. They only

claimed title to the land, and did not dispute their liability to pay the notes, so far as anything appears in the record to the contrary. · While, therefore, the evidence tends to show that Epler and the appellees acted in concert in their endeavor to defeat appellants in the collection of their judgment, there is no sufficient proof of their joint action and identity of interest in the litigation, or that Epler and his counsel represented, or were authorized to represent, appellees in the matter of the compromise and settlement so as to bind appellees, but the allegation in the cross-bill that appellees did in fact consent to the decree and did receive and appropriate to their own use benefits proceeding therefrom cannot be sustained without proof of the acts of appellees themselves, aside from those of Epler.

Ketchum, whose deposition was taken in the cause and who represented the Russells in the litigation from its beginning until after the consent decree was rendered, testified that the interests of the Fannings were, at all times in the litigation, represented by appellee George W. Fanning; that he, George W. Fanning, resided in Jacksonville, where counsel for both parties also resided; that he, said Fanning, made the office of Epler and counsel associated with Epler his headquarters during the litigation; that he, Fanning, was present in Epler's office when the agreement between the parties was reached, and acquiesced gladly and eagerly in the settlement; that prior to the settlement the witness met George W. Fanning upon the street and was asked by him if they would be able to settle the litigation, and assured him, Ketchum, that if the Russells should bid off any of the lands there would be no trouble; that he, Ketchum, made a memorandum of the decrees to be entered and gave it to his law partner, who prepared the decrees which were afterwards given to counsel on the other side for inspection. He also testified that Elizabeth Fanning, the wife of George W., who had never had any vested interest in the subject

matter of the suit, became beneficially interested in the decree to suit her husband, as represented by his attorneys, and that it was desired by George W. Fanning, and so settled in the compromise, that the Fanning interest should be designated in the decree as that of Elizabeth Fanning, and that she had never before been mentioned in the litigation except in the instance of her joining in a mortgage with her husband. He also testified that certain payments were to be made, under the compromise, out of the proceeds of the sale of certain of the lands, for services which had been rendered for the Fannings in the litigation. It was not disputed that Elizabeth Fanning received the $1900 partly in the twenty-seven acre tract, which she bid off, and the rest in cash. But George W. Fanning testified that he never consented to the decree nor agreed to the compromise, and was not present at the time mentioned by Ketchum and did not have the conversations testified to by Ketchum; that he did not know the compromise had been effected until several months after the decree was entered; that he did not know how his wife got the $1900; that he was not present and made no arrangement about it, but that Epler owed her about that amount of money on account of the sale by him of other property belonging to her, and that he supposed that she received the $1900 on that account. Epler, by deposition, testified that Fanning never consented to the settlement or to the decree, but always objected to it, and that he, Epler, made the settlement irrespective of him; that he did not remember how Elizabeth Fanning became interested in the settlement; that it might be true that she obtained the $1900 for the Fanning interest; that he did not think the Fannings had any solicitors in the case; that he acted for himself and no one else; that George W. Fanning knew that he was going to compromise the cases but did not agree with him about it.

This was, in substance, all of the testimony bearing upon the question at issue. Neither William F. Fanning

nor any one else having knowledge of the transaction was called. In this condition of the record we cannot say that the trial court erred in finding that appellants had failed to establish the allegations of their cross-bill that the decree was in fact entered in pursuance of the agreement and consent of the Fannings as well as of the other parties to the record, and that they received the benefit of the proceeds arising therefrom. As before said, it would seem that if they had in fact consented, their consent, instead of their default, would have been recited in the decree, or at least some written agreement taken showing such consent. But be this as it may, we cannot reverse the holding of the trial court and divest the title to real estate upon testimony of so conflicting and unsatisfactory a character.

The decree of the circuit court is affirmed.

*Decree affirmed.*