CHAMBERS et ux. v. McCREERY.

(Circuit Court, D. West Virginia. December 14, 1899.)

Gifts—Sufficiency of Delivery.

A gift of bonds by a husband to his wife is not established by evidence that the bonds were deposited by the husband in a box in a safety-deposit vault, to which the husband and wife each held a key, where they remained until the husband's death; that the wife went with her husband at various times, and assisted him in cutting coupons from the bonds; and that the husband had declared in the presence of third persons his intention to give the bonds to his wife. Such facts do not constitute a completed gift, under the rule that there must have been such a delivery as to devest the donor of dominion and control of the property.

This was a suit to establish a gift alleged to have been made by defendant's intestate. On final hearing.

Brown, Jackson & Knight, for complainants.
Watts & Ashby and John W. McCreery, for defendant.

JACKSON, District Judge. This case was heard some time since, and submitted to the court for its action; and while the same was under consideration one of the parties died, making it necessary to revive the case. At this term of the court the case was revived, and it now comes on to be heard upon the papers for a final decree.

The only question that arises in this case is whether certain bonds that belonged to Edwin Prince in his lifetime were disposed of by him by gift to his wife. It is claimed by the plaintiffs in this action, T. W. Chambers and Lockey T. Chambers, his wife (who was the wife of Edwin Prince, and after his death intermarried with T. W. Chambers), that during the lifetime of Edwin Prince he gave to her certain bonds, set out in the bill, in a safe deposit at Cincinnati. The executors and heirs of Edwin Prince contest this claim, and deny that the bonds were ever disposed of by Edwin Prince, in any manner or form, in his lifetime, and claim that they belong to the estate of Edwin Prince, to be disposed of by his executor. This is a question of a gift inter vivos. A gift of this character has been defined to be "an immediate, voluntary, and gratuitous transfer of personal property by one to another." To make this gift valid, it is essential that the transfer of the property be duly executed, for the reason that, there being no consideration passing between the donor and donee, no action will lie to enforce it. A gift of this character must go into immediate and absolute effect. To make it complete, there must be an actual delivery of the subject-matter of the gift, so far as the same is capable of delivery; and, in the absence of a delivery of that character, the title to the property does not pass from the donor to the donee. Chancellor Kent says in his work (2 Comm. p. 438) that the "necessity of delivery has been maintained in every period of the English law. * * * The donor must part, not only with possession, but with the dominion and control, of the property." An intention to give it is not a gift, and, so long as a gift is incomplete, a court of equity will not enforce and give effect to it. This position of Chancellor Kent is sustained by a long list of authorities in this country. Our courts seem to hold that gifts both inter vivos and causa mortis should be so complete as to deprive the donor of the future control and dominion of the property, and that in order to make same valid it is necessary for the donee to take and retain possession until the donor's death; for, if the donor once regains possession of the gift, it becomes nugatory.

I have given this case much thought and reflection, and, applying the principles of law just announced, I cannot reach the conclusion that the plaintiffs in this action are entitled to relief. The evidence of various witnesses that Edwin Prince intended to give the bonds in question is not in itself sufficient. There must have been upon his part an actual delivery of the bonds to his wife in his lifetime, and she must have reduced them to possession. The evidence shows that these bonds were in a safe deposit at Cincinnati; and while she had one of the keys to the box, and went there at various times with

Prince, her deceased husband, in his lifetime, to clip the coupons, and aided and assisted him in doing so, yet there is no evidence which tends to establish the fact that she ever had supreme control over them, or exercised dominion over them independent of her husband. He placed these bonds in the same place that they were found after his death, and it must be inferred from all the evidence in this case that he, being somewhat advanced in life, took her with him on his various trips to Cincinnati for the purpose of having her take care of him and assist him in his business. Declarations upon his part, in the presence of various persons, that he intended to do something for her or to give the bonds to her, are of themselves insufficient. A promise or a declaration unexecuted in the lifetime of the donor is insufficient to pass title to any property concerning which a decedent may have made an actual promise. I deem it unnecessary to go into an analysis of all the evidence in this case, but, looking at it in the light of what it tends to prove, I am forced to the conclusion that there is no evidence that justifies the court in decreeing the title and the possession of the bonds to the plaintiffs in this cause. For the reasons assigned, I am of opinion that the bill should be dismissed.