(No. 14732.—Appellate Court reversed;  circuit court affirmed.)
WILLIAM C. BOLTON *et al.* Plaintiffs in Error, *vs.* MARY J.
BOLTON *et al.* Admrs., Defendants in Error.

*Opinion filed February 21, 1923.*

1. EVIDENCE—*when statement of witness is not a conclusion.*
Testimony of a witness who was present at the execution of a
note, concerning the purpose of inserting the name of the payee's
wife in the note, that he "understood" it was so the wife could
collect it and send a receipt for it in case the payee was not at
home, is not incompetent as a mere conclusion of the witness.

2. BILLS AND NOTES—*what is not material on question of joint
ownership of note.* In determining the question of joint owner-
ship of a note in which the wife's name was inserted with that of
her husband as payee, the fact that the payee gave his wife checks
on his bank account after payments on the note were received by
him and passed to his account is not material.

3. SAME—*evidence is admissible to show why wife was made
joint payee of note.* In determining whether the widow has any
interest in a note in which her name was inserted with that of
her husband as payee the intention of the parties is the controlling
factor, and evidence of the facts and circumstances surrounding
the execution of the note is admissible.

4. SAME—*mere form of bank account does not determine joint
ownership.* In determining the question of joint ownership of a
bank account of a deceased person, the mere form of the account
will· not be regarded as sufficiently establishing the intent of the
person making it to create a trust in behalf of another or to give
to such other a joint interest in or ownership of the deposit.

5. SAME—*when the widow has no interest in proceeds of note.*
Where a note given in payment for a tract of land conveyed by the
owner is made payable to him "or wife," naming her, the wife has
no interest in the note or in the proceeds thereof after his death,
where she had no interest in the property conveyed and the evi-
dence tends to show that her name was inserted merely to authorize
her to receipt for any payments made in her husband's absence.

6. GIFTS—*burden is on donee to prove essentials of a gift.* The
law never presumes a gift, and the burden is on the donee to prove
by clear and convincing evidence the essential facts of a gift, which
are the delivery of the property by the donor to the donee with
intent to pass the title.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Hancock county; the Hon. HARRY M. WAGGONER, Judge, presiding.

JAMES D. BAIRD, CHARLES J. SCOFIELD, J. PAUL CALIFF, and EARL N. BELL, for plaintiffs in error.

O'HARRA, O'HARRA & O'HARRA, for defendants in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

Plaintiffs in error, who are the heirs-at-law of Alexander Bolton, deceased, filed their objection in the county court of Hancock county to the final report of Mary J. Bolton and A. J. Schneider, administrators of the estate of Alexander Bolton, and who are defendants in error here. The objection was that the administrators had not charged themselves with the proceeds of a certain $12,000 note, the payment of the balance due thereon, in the amount of $11,598, having been made to the administrators since the death of Bolton. The county court held that Mary J. Bolton, the widow, who is one of the administrators, was entitled to one-half the proceeds of the note and the estate to the other half. An appeal was prosecuted by the heirs-at-law to the circuit court of Hancock county, where on a hearing the court ordered the administrators to charge themselves with and account for the entire proceeds of the note as assets of the estate. An appeal was perfected from that court by the administrators and Mary J. Bolton individually, and by agreement taken to the Appellate Court for the Second District, where the judgment of the circuit court was reversed and the cause remanded, with directions to enter a final order that the widow, Mary J. Bolton, was entitled to one-half the proceeds of the note and the other half was the property of the estate. The heirs-at-law filed a peti-

tion for a writ of *certiorari*, which was granted, and the cause is before this court for review.

Cross-errors have been assigned by defendants in error. The sole question, however, to be determined in the case is the ownership of the proceeds of the note involved, which Mary J. Bolton, the widow, claims as her individual property, while plaintiffs in error contend the proceeds belong to the estate of Alexander Bolton.

The note involved, with indorsements thereon, is as follows:

"$12,000.                                      *February 9th, 1914.*

"On or before six yrs. after date, without grace, we promise to pay to the order of Alexander Bolton or wife, M. J. Bolton, twelve thousand and no-100 dollars, for value received, with interest from date at the rate of five per cent per annum until paid. Principal and interest payable in U. S. gold coin at Nauvoo, Illinois, and in case suit is instituted to collect this note or any portion thereof, we promise to pay such additional sum as the court may adjudge reasonable as attorney's fees in said suit.

CHRIST RASMUSSEN,
No. ........                                   MRS. BOLINE RASMUSSEN,
    Due February 9, 1920.                      BELLE B. BALMER."

Indorsements on back:
"Payments:
    Date: August 11, 1914; amount $1000.
    Sept. 12, 1914, $1500.
    12-31-1914, paid interest in full to 2-9-15."

Alexander Bolton lived for a great many years on a farm near Nauvoo, in Hancock county, Illinois. He died there intestate on September 14, 1915. At his death he left surviving him his widow, Mary J., two sons, three daughters, four grandchildren who were the children of a deceased son and two other grandchildren who were the children of another deceased son, as his only heirs-at-law. The deceased was married twice. His first wife was a sister of Charles A. Clark, of Chicago, and by this marriage all the children of deceased were born. The second wife, who is now the widow of deceased, was a daughter of the

Clark mentioned. The second marriage took place in Chicago during October, 1912, at which time Bolton was about seventy-five years of age and his second wife about forty-five years old. No children were born of this marriage. In August, 1912, and prior to his marriage, Bolton bought approximately 67 acres of land located in Placer county, California, title to which was taken in himself, the deed therefor executed to him and properly recorded in that State. It is a part of the proceeds of the sale of this land that is in controversy. The land had been rented during 1913 by Bolton to Belle Balmer and her husband in his lifetime. Belle Balmer was a daughter of Bolton. In February, 1914, Bolton and his wife were in California and were at the house of his daughter, Belle, near Loomis, California. While there the sale of the 67 acres of land was made to Christ and Boline Rasmussen. The deed was prepared by an attorney named Tabor at his office in Auburn, California, where it was executed by Bolton and his wife in the presence of the grantees named in the deed, also Belle Balmer and the attorney, who was also a notary public and took the acknowledgment. The deed and acknowledgment bear date of February 9, 1914. The deal was not closed at that time, but another meeting of the parties, without the attorney, was had at Mrs. Balmer's house either on that evening or the evening of the following day, at which time the sale was completed and deed delivered to the purchasers. The purchase price of the land was $15,000, of which $3000 was paid in cash and the balance evidenced by the note given by Christ and Boline Rasmussen for $12,000. The note was also signed by Mrs. Balmer, though she neither bought nor received title to any of the land. The note was written by Mrs. Balmer, and after its execution she handed it to her father, who put it in a book and then in his pocket. Three substantial payments were later made on the note prior to the death of Bolton. These payments were in the form of drafts, and at least two of them were payable to

Bolton or wife and sent by Rasmussen to Bolton. The indorsements of these payments were made on the note by A. J. Schneider, cashier of the State Bank of Nauvoo, who is also one of the administrators, at the request of Bolton, and these payments passed to the credit of Bolton's bank account. After the death of Bolton the note in question was found among other papers and notes belonging to him in his safety deposit box at the State Bank of Nauvoo by Schneider, who testified that "Mr. Bolton kept his papers in this box." The further sum of $11,598, being the total balance due on the note, was paid by the Rasmussens after the death of Bolton, and such payments as were made were indorsed on the note by Schneider and deposited in the bank to the account of the administrators. The deposits and entries he testified were made "by me as administrator of the estate and as cashier of the State Bank of Nauvoo." It seems, however, that the proceeds of this particular note were kept in a special deposit in the bank, separate and apart from the other account of the administrators. The inventory of the estate referred to the note here in question but specifically stated it was claimed by Mrs. Bolton individually, and that it was not a part of the assets of the estate. The final report of the administrators also made mention of the proceeds of the note and of the claim thereto by the widow. Her co-administrator, Schneider, made no claim on the balance collected on the note for the benefit of the estate but merely stated the cash collected thereon was in the bank; that he did not know to whom it belonged, and it was being held by the bank until its ownership was determined. The personal assets of the estate, exclusive of the proceeds of the note here in question, amounted to approximately $23,646 and were seemingly satisfactorily distributed, and the widow's share received by her was about $9200.

It is contended by defendants in error that the evidence shows an intention on the part of deceased that his wife

should have some interest in the note; that he intended to give the California land to her; that her name was inserted in the note as one of the payees with the consent of deceased, the latter having been present when the note was prepared and read without making any objection thereto; that the sale of the land and making of the note were a contract for the benefit of a third person, namely, Mrs. Bolton; that the note was payable in the alternative to either the husband or wife, either of whom, during their lives, could receive payment, and that upon the husband's death the wife continued to have the same right and was entitled to the whole proceeds of the note; that the face of the note shows the interest of the holder to be that of a joint payee, and he held it for himself and the other payee. Complaint is also made by defendants in error of the rejection or striking of certain testimony of the widow's step-mother, made about the time of the second marriage of deceased, as well as testimony of Schneider, the cashier, relative to the payment of money by Bolton to his wife. They also complain of the withdrawal, before trial, of a deposition of Belle Balmer taken in California.

It will be unnecessary for us to discuss each and every point raised in the briefs of counsel, thereby unnecessarily adding to the length of this opinion. We shall discuss only the matters that are vital in arriving at a decision of the question involved.

Plaintiffs in error produced evidence on the hearing showing the purchase of the California lands by deceased and title thereto in him prior to his marriage. It was also shown that under the California laws this ranch was the sole and individual property of Bolton, and that it was unnecessary to have the signature of his wife upon a deed thereto for the purpose of transferring good title to a purchaser.

There is raised in the brief of the defendants in error a point as to all the land not being the property of Bolton,

due to a misdescription in the deed from the Boltons to the Rasmussens, wherein 7.10 acres of the ranch owned by Bolton was described as located in township 12 instead of township 11, as in Bolton's original deed. However, the description of this small tract described by metes and bounds is a part of the 67 acres Bolton bought as described in his deed, and the discrepancy in the number of the township is a mere clerical error, and not such as to warrant a conclusion, as defendants in error claim, that this part of the land belonged to the widow, and that was the reason she joined in the execution of the deed to the 67 acres to the Rasmussens. We think the conclusion warranted that the deceased owned the entire 67 acres and furnished the entire consideration for the note in question.

The testimony of Mr. and Mrs. Rasmussen, the purchasers of the acreage and the signers of the note, was taken by deposition in California, and one of counsel for defendants in error was present at the taking of such testimony. The substance of Mrs. Rasmussen's testimony was that all the negotiations for the purchase of the property were with Bolton at an agreed price of $15,000, part of which ($3000) was paid in cash and the balance evidenced by the note for $12,000. A day or two before the deal was closed and the note was signed, the Boltons, the Rasmussens and Belle Balmer went to Auburn, California, where lawyer Tabor prepared the deed to the property. Witness stated while she and Mrs. Bolton were in witness' buggy in front of the lawyer's office, and before the deed was prepared, Mrs. Bolton said to witness, "You see that I get my name put on that deed," and started to say something else, when Rasmussen and Bolton came around the corner and Mrs. Bolton said "Sh" and told witness to keep still, after which witness got out of her buggy, tied her horses and went into the lawyer's office. All the parties mentioned were present in Tabor's office when the deed was signed, and nothing was said by anyone relative to Mrs. Bolton having any interest

in the property or that Mrs. Bolton was to have any portion of the proceeds from the sale of it. Mrs. Bolton did not hesitate about signing the deed. Witness testified the same parties met and completed the deal at Belle Balmer's house on the following evening, when the $3000 was paid, the note signed and the deed delivered. She stated the Boltons, Belle Balmer, witness and her husband were present when the note was written and signed. Belle Balmer wrote the note and said, "How will I word this?" and then suggested writing "or wife;" "I will put it Alexander Bolton or wife, M. J. Bolton." Nothing was said before, at the time of or after signing the note, by anyone, about Mrs. Bolton having any interest in the note or in the proceeds of it, or that Mr. and Mrs. Bolton would own it jointly, or that in the event of the death of one of them the other was to get it. Bolton was present when his daughter, Belle, wrote the note and when she read it over aloud, and he made no objection to the way the note was written. On cross-examination witness was asked, "You understood, didn't you, that Mrs. Bolton was insisting that it be fixed in some way that she would get the money on it?" To which witness replied, "No." Then followed the question, "You didn't understand that at all?" and witness replied: "No; that was for convenience sake; if he wouldn't be at home she could send the receipt for it; it was talked about that if he wasn't at home she could make a receipt and acknowledge the money." After the note was signed Belle Balmer gave it to her father and he put it in his pocket. She stated the payments made on the note were by drafts, and at least two of them were made payable to Bolton or wife.

Christ Rasmussen testified that he has been hard of hearing for from four to six years; that he and his wife talked to Bolton only about buying the land, and he never heard any conversation regarding the inserting of Mrs. Bolton's name in the note. In response to the question, "Was

any conversation had at the date the note was signed why Mrs. Bolton's name was put in as payee?" he answered: "The way I understood it was, that if Mr. Bolton wasn't home Mrs. Bolton could collect it and send a receipt for it." After the note was signed Bolton put it in his pocket. Witness further testified the first three payments or indorsements on the note were made by draft and sent to Bolton.

Defendants in error assert the testimony of the Rasmussens was a mere conclusion and is not entitled to any weight. We think this a misapprehension. They testified to what was said at the time the note was prepared and executed and what the purpose was said to be in putting Mrs. Bolton's name on the note. In reply to a question, on cross-examination of Mrs. Rasmussen by counsel for defendants in error, whether she understood Mrs. Bolton was insisting the note be fixed so she would get the money on it, the witness answered no, and repeated the substance of what was said when the note was prepared and executed. There is nothing in the testimony of the Rasmussens, or anywhere in the record, to discredit it.

The testimony of Schneider, the cashier of the bank at Nauvoo, showed the note was in Bolton's safety deposit box among his other papers, and that payments made from time to time on the note prior to the death of Bolton were indorsed upon the note by the cashier at the request of deceased and then the payments passed to the credit of Bolton's bank account.

Complaint is made by defendants in error of the striking and rejection of certain testimony of the widow's stepmother, Mrs. Clark. She testified to a conversation had with deceased the second day after his marriage, when he said it was his intention to give the land in California to Mrs. Bolton; and defendants in error offered to prove by this same witness that just prior to the marriage Bolton said he intended to give Mrs. Bolton the California land. The former answer was stricken on motion and the last mentioned

306—31

evidence was rejected on objection. Both alleged conversations were had about the same time and of like substance. The judge heard the testimony himself and considered it of little weight. It was not directly connected with the giving of the note in question, happened some fifteen or sixteen months prior thereto, and during that period of time such intention was never again mentioned, so far as this record shows. The testimony, had it been considered, was of little or no importance, and its admission could not, in our opinion, have affected the decision of the case.

The court's refusal to permit the cross-examination of cashier Schneider relative to Bolton paying to his wife any money out of his bank account after payments on this note had been received by Bolton and passed to his bank account we think was not prejudicial. The mere fact, if it was a fact, that Bolton had given his wife checks on his bank account would not be enlightening on the question of her joint ownership of the note.

No importance can be given the complaint of defendants in error as to the withdrawal of the deposition of Belle Balmer. The deposition was withdrawn, upon motion made therefor, about five days after the motion was made. Whatever effect was caused thereby is not shown by defendants in error, and the bill of exceptions does not contain the deposition.

The defendants in error cite and rely upon the case of *Erwin* v. *Felter*, 283 Ill. 36, and that case was considered by the Appellate Court as conclusive of the case under consideration. In that case Emily Rusk deposited her money in a bank and obtained four certificates of deposit therefor, each payable to herself or daughter or the survivor of either. The certificates were left at the bank and receipts therefor delivered to the depositor, stating, in substance, that the certificates of deposit (describing each) had been delivered to the bank, and that the bank was authorized to pay the amount due thereon to the daughter in the event

the mother predeceased her. Mrs. Rusk, the mother, died, and the question raised was as to the ownership of the certificates. The court held the proceeds of the certificates were the property of the daughter and not assets of the mother's estate. This court said the money deposited was that of the mother; that the certificates were payable on their face to the mother or daughter or the survivor, and were left with the bank with the express instruction to pay the amount to the daughter if she should survive her mother; that the bank gave its several receipts for the respective certificates and expressly agreed to pay the money to the daughter if she survived her mother; that the writings were left with the bank, presumably for the convenience of the mother and daughter; that pursuant to the agreement between the bank and the mother the bank made payments of both principal and interest to the daughter prior to the mother's death, and the court concluded that the writings clearly showed the mother's expressed request and intention that the daughter should have a joint interest with the mother in the deposits and that the survivor should have the balance represented by the certificates upon the death of either the mother or daughter. It will be noted that in arriving at the conclusion reached in that case the court took into consideration the surrounding facts and circumstances existing at the time of the transaction and the happenings or acts connected therewith which followed.

The controlling problem involved in a case like the one just cited is to ascertain whether the depositor intentionally and intelligently created the condition embracing the necessary elements of joint ownership. There must be an intent to do so by the party creating the condition. The *Erwin case* and the cases cited in the opinion are authority for the rule,—and we think it the general rule,—that the facts and circumstances surrounding the transaction, and the happenings pertaining to such transaction thereafter, may be inquired into for the purpose of aiding the court in ascer-

taining the intention of the parties. We cannot see where that case is conclusive of this case as the facts here appear. In the case at bar there was no contradiction of the Rasmussens' testimony that the note included the name of Mrs. Bolton for convenience sake in receiving and collecting payments thereon and issuing receipts therefor; nor was there any contradiction of other testimony given by them or any other witness for plaintiffs in error. The note was given as part payment for the sale of the California land purchased and owned by deceased prior to his marriage and controlled and rented by him for a period of about fifteen months after his marriage. He could have given merchantable title to the property under the laws of its situs without Mrs. Bolton ever having joined him in the execution of a deed for it, so that obviously it cannot be seriously claimed that his wife had any interest in the land whatever. Bolton, who was about seventy-seven years of age when the note was made, may have heard the note read by his daughter after she had written it, but his silence in making no complaint of its wording clearly does not prove he recognized his wife did have any interest in the land or that he intended his wife to have any portion of the proceeds of sale. He said nothing whatever, so far as this record shows, about his wife having any interest in the property or in the note. He may have just as well had in mind, as testified to by the Rasmussens, that his wife's name being inserted in the note as a payee she could receipt for any payments made thereon in his absence. No proof appears in the record as to any distribution between deceased and his wife of the $3000 cash paid at the time of the consummation of the sale. There is no testimony except that of the Rasmussens as to any conversation in the lawyer's office at the time of the drafting and execution of the deed. There is no proof at all showing that at the actual time of the execution of the deed or making or signing of the note Mrs. Bolton claimed any interest in the note or had any title to the prop-

erty. Her first claim to the note seems to have been after her husband had departed this life, and she then set up her alleged rights thereto in the inventory of the estate of deceased. After the making of the note the several payments of $1000, $1500, and another sum representing interest to a certain date, were received by Bolton. The indorsements of the respective amounts paid on the note at each time were made by Schneider, the cashier of the Nauvoo bank, at the express request and direction of Bolton. This note, so far as the record discloses, was no doubt kept continuously, along with Bolton's other papers, in his safety deposit box in the Nauvoo State Bank, for Schneider testified "Mr. Bolton kept his papers in this box," and upon the death of deceased the note here in question was in this same box among his other papers. It has been said in many cases, particularly where the ownership of bank accounts has been in controversy, that the mere form of the account will not be regarded as sufficiently establishing the intent of the person making it to create a trust in behalf of another, or to give to such other joint interest in or ownership of the deposit. *Kelly* v. *Beers*, 194 N. Y. 49; *In re Bolin*, 136 id. 177.

We have not discussed any other propositions raised in the briefs as to presumptions and burden of proof. Whatever presumption existed in favor of Mrs. Bolton that she had a beneficial or joint interest in this note, due to the fact that she was shown on its face to be a joint payee, or whatever benefit she may have derived, as claimed by her counsel, from the legal proposition that the possession of one joint payee of a note is the possession of the other, we think the record clearly discloses and establishes that Mrs. Bolton never did have any interest in the property, and there is no intention shown that she did have or was to have any interest in the proceeds of the sale of that property or of the note here in question. If the rights of the widow were to be claimed or upheld on the basis of a gift, the evidence must show that the donor intended to divest himself

of the possession of his property, and it should be inconsistent with any other intention or purpose. The law never presumes a gift, and the burden of proof thereof is upon the donee to prove the essential facts of a gift, which essentials are the delivery of the property by the donor to the donee with intent to pass the title. (*Fanning* v. *Russell,* 94 Ill. 386; *Telford* v. *Patton,* 144 id. 611.) Such proof to sustain the gift must by the weight of authority be clear and convincing. 12 R. C. L. sec. 18, p. 941; *Rothwell* v. *Taylor,* 303 Ill. 226.

We are of opinion the judgment of the Appellate Court is erroneous. It is therefore reversed and the judgment of the circuit court is affirmed.

> *Judgment of Appellate Court reversed.*
> *Judgment of circuit court affirmed.*