## APPEAL OF CHARLES GREENBLATT.

Docket No. 2348.   Submitted May 8, 1925.   Decided June 17, 1925.

*William Kaumheimer*, *Esq.*, for the taxpayer.
*A. Calder Mackay*, *Esq.*, for the Commissioner.

Before GRAUPNER, TRAMMELL, and PHILLIPS.

This appeal involves a deficiency in income tax for the year 1920 in the amount of $6,567.34. The question involved is whether certain stock which was sold during 1920 was the property of the taxpayer or whether he had given this stock to his mother prior to the sale.

FINDINGS OF FACT.

The taxpayer resided in Milwaukee, Wis. During 1919 he was the owner of 367½ shares of the capital stock of the Badger State Investment Co. of the par value of $100 each, and 20 shares of stock

of the Standard Amusement Co. Prior to 1919 the wife of the tax-payer had died and he had been living with his mother, Mrs. Taube Greenblatt. He was contemplating marrying again. There were seven children in the family, but the taxpayer was the only one at that time who was not married.

Greenblatt was the secretary and treasurer of the Badger State Investment Co., of which one Heller was the president. Negotiations had been entered into for the sale of the stock of the Badger State Investment Co., and also of the stock of the Standard Amusement Co. During the pendency of these negotiations the taxpayer assigned to his mother, Taube Greenblatt, by endorsement, his stock certificates in the Badger State Investment Co. and the Standard Amusement Co. The assignment is dated December 10, 1919. New certificates were issued in the name of Taube Greenblatt, bearing date December 10, 1919.

On December 22, 1919, the taxpayer in his own name joined with the stockholders of the Badger State Investment Co. in an option to one J. S. Grauman, of Milwaukee, giving him the option to purchase the capital stock of that company on the terms and conditions stated in the written option.

In May of 1920 the option was exercised. Instead of the stockholders conveying the stock, the Badger State Investment Co. and the Standard Amusement Co. conveyed their assets and the respective corporations received the consideration therefor. They then proceeded to distribute among the stockholders the consideration received, consisting of bonds and cash.

The Badger State Investment Co., by its president, Heller, issued its check to Charles Greenblatt personally and gave him bonds for the balance of the amount representing the interest nominally owned by his mother.

Heller acted as trustee for the stockholders of the Standard Amusement Co., received the consideration from the sale of its property, and distributed it to the stockholders. The taxpayer received a check made payable to him personally for his proportion nominally owned by his mother.

The cash which was received, represented by the checks, was deposited in the bank in Greenblatt's name and the bonds which were received from the Badger State Investment Co. were deposited by him in his safe-deposit box. As the bonds matured he received cash therefor, and he also received the interest and deposited the money in his own name. He entered the amounts received, however, in a memorandum book to the credit of his mother. He used the money received and paid his mother, Taube Greenblatt, interest on the amounts received. During other years Greenblatt had paid his mother an amount which might have been greater or less than

the amounts paid as interest. She was dependent upon his bounty for support prior to the transaction involved.

No part of the principal was ever turned over to his mother. When the bonds were deposited in the safe-deposit box of Greenblatt he attached thereto a small slip of paper on which was written the name of Taube Greenblatt for the purpose of identifying them as her property.

At different times since the bonds were placed in the safe-deposit box Greenblatt removed them and used them as collateral for his personal uses. The borrowing of money thereon was repeated from time to time.

When the stock of the two corporations was endorsed to his mother, Greenblatt turned it over to the attorney who represented the Badger State Investment Co. for the purpose of having new certificates issued but did not deliver it to his mother. He stated that he probably showed it to her. None of the bonds or the money received from the sale of the property referred to was ever delivered into the possession of Taube Greenblatt. When the interest of Greenblatt in the two corporations was terminated in the latter part of 1920, Taube Greenblatt was given credit on a memorandum book kept by Greenblatt for the amount of the cash and bonds, and the entries in that book are the sole evidence of any attempt of a delivery between Greenblatt and his mother.

The books of the Standard Amusement Co. show a distribution of dividends to its stockholders on May 5, 1920. A check was received by Greenblatt for the proportion of the consideration received from the sale of its property represented by the stock then standing in Taube Greenblatt's name, and the check received was made payable to Greenblatt from Heller as trustee.

There was not an actual bona fide gift by the taxpayer in 1919 of the stock owned by him in the Badger State Investment Co. and the Standard Amusement Co.

DECISION.

The determination of the Commissioner is approved.