FRANK J. VLCHEK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 5301.   Promulgated September 6, 1927.

Gain upon the sale of stock transferred upon the books of the corporation from the name of the petitioner to that of his children, held to be taxable to petitioner.

*William S. Hammers, Esq.,* for the petitioner.
*J. W. Fisher, Esq.,* for the respondent.

The petitioner seeks a redetermination of a deficiency of $17,665.96 determined by the Commissioner for the year 1917, the amount of which was recomputed at $14,865.52 by the Commissioner after the notice of determination of the deficiency had been mailed to the petitioner and his appeal filed with the Board. The questions at issue arise out of the sale of 3,032 shares of the capital stock of the Vlchek Tool Co. and the issues presented for determination are as follows:

(1) Did the taxpayer own 3,032 shares of the capital stock of such company at the time of sale or were 3,000 shares owned by his children?

(2) What was the fair market value of stock of another company which was received as a part of the sales price?

(3) What was the fair market value on March 1, 1913, of the good will of the Vlchek Tool Co.?

(4) Did the Commissioner overrule a decision of his predecessor and, if so, was such action proper?

### FINDINGS OF FACT.

The petitioner is a citizen of the United States residing in Cleveland, Ohio. Prior to 1895 his business was that of blacksmith. In that year he began to manufacture tools. In 1909 his foundry building was destroyed by fire, some of the machinery and stock being saved. Thereafter, in the same year, the Vlchek Tool Co. was incorporated with a capital stock of $25,000, of which $7,000 was issued to the petitioner for the machinery and stock saved and for cash and $4,000 to the petitioner for good will. Seven thousand dollars par value of such stock was purchased by friends of the petitioner for cash. The Commissioner has determined the March 1, 1913, value of $25,000 par value of the stock then outstanding to be $81,142.35.

Prior to 1913 the company paid no dividends, a part of the profits being put back into the business and a part spent in advertising. The company was engaged in the manufacture of small tools which it sold through jobbers and large retail organizations. To promote sales it furnished such jobbers and retailers with plates or cuts with which to illustrate their catalogues.

In 1917 there were outstanding 6,000 shares of common stock of the par value of $50 per share. The petitioner was the president of the company and owned 3,032 shares of its stock. On August 10, 1917, he gave to one Trunecek an option to purchase the stock owned and controlled by him and as much more as he might secure from the other stockholders in said company at $100 per share payable in cash or as might be otherwise agreed upon after the acceptance of the option by Trunecek. The option provided that it should expire on November 10, 1917. Trunecek assigned such option to a syndicate which proposed to purchase the corporation. The syndicate, however, was unable to secure subscriptions for the purchase of such stock, or the assets of the corporation, in excess of $450,000. Shortly prior to the date when the option was to expire the syndicate managers approached the petitioner, advised him of the situation, and suggested that he accept, in lieu of $150,000 cash, stock in a new corporation to be organized to take over the assets of the Vlchek Tool Co. The petitioner agreed to do so.

On November 14, 1917, Trunecek made an offer in writing to the Vlchek Tool Co. to purchase all its property and assets as a going concern subject to all its obligations in exchange for 6,000 shares of the preferred stock and 2,250 shares of the common stock of a corporation about to be organized under the laws of the State of Ohio, which corporation was to have the same name and is hereafter referred to as the new company. The transfer of the property and payment of the purchase price was to be accomplished by the deposit of the stock of the new company with the National Commercial Bank

of Cleveland, such certificates to be delivered by the bank to such party or parties as the seller should direct upon deposit with the bank on or before November 30, 1917, of the stock of the old corporation and of proper deeds or other instruments transferring title to the property and rights purchased. The proposition was accepted by a vote of the stockholders of the Vlchek Tool Co. held November 26, 1917. This contract was assigned by Trunecek to the members of the syndicate who had agreed to purchase the stock of the new company.

During 1919 the petitioner received from the National Commercial Bank of Cleveland out of such transaction $153,200 in cash and $150,000 par value of the preferred stock and $22,500 par value of the common stock of the new company.

On November 6, 1917, the petitioner caused a certificate for 1,000 shares of the stock of the Vlchek Tool Co., theretofore owned by him, to be issued to each of his three children, Henry, Valerion, and Mary, thereby reducing the stock standing in his name to 32 shares. Such certificates when issued were delivered by the petitioner to his children and by them to their mother, who placed them in a strong box used by the family for papers, jewelry, and other valuables. The children were present at the meeting of the stockholders held on November 26, 1917, hereinabove referred to, and voted such stock. When the cash of $153,200 and the stock in the new company were received by the petitioner from the National Commercial Bank of Cleveland he delivered one-third of such cash to one of his sons and placed the balance on deposit in various banks in his own name. The stock of the new company was issued in his name. The interest upon the bank accounts and dividends upon the stock of the new company were paid to the children or added to the bank accounts. In 1919 the Vlchek Investment Co. was organized and the stock of the new company and the cash on deposit in the banks were transferred to that company. Stock was issued in four equal parts to the three children and the wife of the petitioner. The intention to organize such investment company for the purpose of holding and investing the proceeds of the sale of the stock of the Vlchek Tool Co. existed prior to the transfer of the stock of the Vlchek Tool Co. from petitioner to his children.

Upon his 1917 income-tax return the petitioner stated that he was the owner of 3,032 shares of the stock of the Vlchek Tool Co. and that he had received the proceeds attributable to such a number of shares. In various proceedings before the office of the Commissioner of Internal Revenue the petitioner stated in affidavits that he was the owner of such stock. In the first petition filed with the Board the petitioner did not claim any error in attributing ownership of such stock to him. In an amended petition the petitioner

first claimed that 3,000 shares of such stock was the property of his children.

The Commissioner determined the value of the stock of the new company received by the petitioner to be $150,000.

Between September 22, 1922, and December 18, 1922, a certificate of overassessment was issued from the office of the Commissioner of Internal Revenue, Income Tax Unit, wherein it was held that such stock should be eliminated from the computation in determining the income of the petitioner.

### OPINION.

PHILLIPS: There is not sufficient evidence from which we may determine a March 1, 1913, value of the stock different from that determined by the Commissioner. The determination made by him is based upon the capital and surplus of the corporation as shown by its books and includes no allowance for good will. The petitioner testified from memory that the earnings for the years from 1909 to 1912 were approximately $88,000. Since it appears that no dividends were paid and that the surplus of the corporation in 1913 was only $56,000, we are not inclined to attach much importance to the statement made with reference to the approximate earnings in the absence of any explanation of the discrepancy between the proper earnings and the surplus. Furthermore, there is nothing in the record from which we may determine whether an adequate salary for the service rendered by the petitioner to the corporation in those years was deducted in determining the earnings. The record would indicate that it was doubtful whether such was the case. On the record the action of the Commissioner must be approved.

It is the contention of the petitioner that the stock of the new company had no fair value and can not be included in the computation of the income. The evidence discloses that $450,000 of the $600,000 par value of the stock of the new corporation was sold. It is urged that because the syndicate was unable to secure subscriptions for the remainder, it had no fair market value. The petitioner had his choice of either accepting this stock or demanding cash, under the option granted, in which latter event the sale probably would not have been carried out. The other stockholders were all to receive cash. He accepted the stock in lieu of the cash. In view of all the surrounding circumstances, we are of the opinion that no error was made in treating this stock as worth its par value.

The petitioner further alleges that the former Commissioner of Internal Revenue had decided that such stock had no fair market value and that any profit on the transaction should be taxed when disposition was made of the stock. The record, however, fails to

show that any former Commissioner has passed upon the question. Apparently, the petitioner relies upon a certificate of overassessment issued in the latter part of 1922 at which time the present Commissioner was in office. The record does not present the question whether one Commissioner may overrule the determination of his predecessor on a question of fact.

It is the petitioner's contention, raised for the first time in an amended petition filed with this Board, that the proceeds from only 32 shares of the capital stock of the Vlchek Tool Co. were his property at the time of the dissolution of that company or the sale of its stock and that the remaining 3,000 shares had previously been given to his children. The record is conflicting and it is difficult to know what is the truth. There is no doubt that such stock was transferred to the children on the books of the corporation and that they voted it at a meeting of the corporation which authorized the sale of the assets to the new corporation. There is no doubt that the petitioner had delivered the stock to his children and that the proceeds finally found their way into the hands of the children except to the extent that their mother received an equal interest with them. All such facts indicate a bona fide gift of the stock to the children.

The fact that the father thereafter handled the receipt of the proceeds and attempted to keep it intact for the children is entirely consistent with the contention that they were the owners. The action of the father was no more than natural, considering the age of the children and their lack of business experience. On the other hand, it appears that prior to the time when the transfer was made to the children the matter of forming a family corporation to hold the proceeds was discussed and it was agreed that the proceeds should be placed in such a corporation. It would seem that all the details for the sale had already been arranged. Nothing remained to be attended to except to receive the proceeds. In such circumstances there may be a very grave question whether the petitioner transferred and delivered the stock to his children with the intention that they should have such stock, or under an agreement that the proceeds of the sale should be theirs to be invested in a family corporation under the control of the petitioner. A gift involves more than a delivery of the property. There must be the present intention that the property so delivered shall be the property of the donee. Ordinarily delivery implies such an intention but such is not the case here because it appears that the intention was not that the stock should belong to the children but that the proceeds should go to an investment corporation of which they should be the owners. The stock appears to have been delivered with the understanding that such should be the case. There are further facts which confirm this belief. In the original return

filed by the petitioner and in affidavits furnished to the Commissioner of Internal Revenue which were produced on cross-examination of the petitioner, statements were made that he was the owner of all of this stock. In the original petition filed before the Board no claim was filed that he was not the owner and it was not until an amended petition was filed herein that it was claimed that any gift of the stock had been made to the children. The person who had handled petitioner's tax matters before the Commissioner, called to the stand as a witness, testified that the 1917 return had been prepared by another accountant who had included the proceeds as income to the petitioner; that during the investigation and controversy with the Unit he had found the record showed that the proceeds had been considered as having been received and taxable to the petitioner and that it was not until the latter part of 1924, in examining the minute books and old stock records for other information that he had found the records showing the gift of the stock to the children prior to the date of the sale and that upon questioning the petitioner about such transaction the petitioner had stated that the transfer to the children was not made to avoid any tax and that on the advice of counsel petitioner had always included it in his tax returns.

Considering the entire record we are of the opinion that the transfer and delivery of the stock to the children prior to its sale was not for the purpose of vesting ownership of such stock in them and did not do so and that the petitioner is taxable upon any income which results by reason of the ownership of such stock.

*Decision will be entered for the respondent.*

Considered by MARQUETTE and VAN FOSSAN.
MILLIKEN not participating.