RICHARD TUFFLI, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

G. F. TUFFLI, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

S. G. TUFFLI, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 17042, 17043, 17045. Promulgated October 26, 1928.

*A. F. Schaetzle, Esq.*, for the petitioners.
*L. A. Luce, Esq.*, for the respondent.

OPINION.

LANSDON: The only question here is whether the petitioners completed the gift to their wives by the securities in question in such manner as to pass the title to the respective wives of both the principal and income of the property alleged to have been transferred. It is elementary that the essential elements of a gift are an intention to give, a transfer of title or delivery and an acceptance by the donee. It is stipulated that the securities here involved were negotiable commercial paper. The Uniform Negotiable Instruments Act, adopted by all the States of our Republic, provides that "A negotiable instrument may be transferred by mere delivery either actual or constructive." It is conceded that in the instant case there was no manual or actual delivery. It remains, therefore, for us to determine whether there was a constructive delivery sufficient, other elements of a gift being present, to transfer ownership from the several petitioners to their respective wives.

The only evidence to support the petitioners' theory of delivery is that the securities in question were placed in a safe-deposit box that was used by the corporation of which alleged donors were stockholders and that the key to such box was kept in the office of the corporation and was accessible at all times to all the alleged donors and donees. This is not sufficient to accomplish transfer of ownership of the securities. In our opinion in *Harry C. Moores*, 3 B. T. A. 301, we said:

It is essential to the validity of a gift that there be a distinct delivery of property so as to show that the donor has relinquished all dominion over it.

The donor went as far in this case as he could have gone, unless he had secured the appointment of a guardian or trustee to manage the property of his daughters.

In these proceedings there is not the slightest evidence that the alleged donors relinquished all or any dominion over the property in question. Each of them had access to the box in which the securities were kept and, so far as the record shows, each had the right to sell the securities at any time without consultation with his wife or permission from her. In deciding a very similar controversy in *Chambers* v. *McCreery*, 98 Fed. 783; affd. 106 Fed. 364, the court said:

The only question that arises in this case is whether certain bonds that belonged to Edwin Prince in his lifetime were disposed of by him by gift to his wife. It is claimed by the plaintiffs in this action, T. W. Chambers and Lockey T. Chambers, his wife (who was the wife of Edwin Prince, and after his death intermarried with T. W. Chambers), that during the lifetime of Edwin Prince he gave to her certain bonds, set out in the bill, in a safe deposit at Cincinnati. The executors and heirs of Edwin Prince contest this claim, and deny that the bonds were ever disposed of by Edwin Prince, in any manner or form, in his lifetime, and claim that they belong to the estate of Edwin Prince, to be disposed of by his executor. This is a question of a gift *inter vivos*. A gift of this character has been defined to be " an immediate, voluntary, and gratuitous transfer of personal property by one to another." To make this gift valid, it is essential that the transfer of the property be duly executed, for the reason that, there being no consideration passing between the donor and donee, no action will lie to enforce it. A gift of this character must go into immediate and absolute effect. To make it complete, there must be an actual delivery of the subject-matter of the gift, so far as the same is capable of delivery; and, in the absence of a delivery of that character, the title to the property does not pass from the donor to the donee. Chancellor Kent says in his work (2 Comm. p. 438) that the "necessity of delivery has been maintained in every period of the English law. * * *. The donor must part, not only with possession, but with dominion and control, of the property." An intention to give it is not a gift, and, so long as a gift is incomplete, a court of equity will not enforce and give effect to it. This position of Chancellor Kent is sustained by a long list of authorities in this country. Our courts seem to hold that gifts both *inter vivos* and *causa mortis* should be so complete as to deprive the donor of the future control and dominion of the property, and that in order to make same valid, it is necessary for the donee to take and retain possession until the donor's death; for, if the donor once regains possession of the gift, it becomes nugatory.

I have given this case much thought and reflection, and, applying the principles of law just announced, I cannot reach the conclusion that the plaintiffs in this action are entitled to relief. The evidence of various witnesses that Edwin Prince intended to give the bonds in question is not in itself sufficient. There must have been upon his part an actual delivery of the bonds to his wife in his lifetime, and she must have reduced them to possession. The evidence shows that these bonds were in a safe deposit at Cincinnati; and while she had one of the keys to the box and went there at various times with Prince, her deceased husband, in his lifetime, to clip the coupons and aided and assisted him in doing so, yet there is no evidence which tends to establish

the fact that she ever had *supreme control over them, or exercised dominion over them independent of her husband.* He placed these bonds in the same place that they were found after his death, and it must be inferred from all the evidence in this case that he, being somewhat advanced in life, took her with him on his various trips to Cincinnati for the purpose of having her take care of him and assist him in his business. Declarations upon his part, in the presence of various persons, that he intended to do something for her, or to give the bonds to her, are of themselves insufficient. A promise or a declaration unexecuted in the lifetime of the donor is insufficient to pass title to any property concerning which a decedent may have made an actual promise. I deem it unnecessary to go into an analysis of all the evidence in this case, but, looking at it in the light of what it tends to prove, I am forced to the conclusion that there is no evidence that justifies the court in decreeing the title and the possession of the bonds to the plaintiffs in this cause. For the reasons assigned, I am of opinion that the bill should be dismissed. (Italics supplied.)

Some weight is ascribed to the fact that the wives had access to the key of the box in which the securities were kept, although there is no evidence that either of them ever actually used it for any purpose. In *Hatch* v. *Atkinson*, 56 Me. 324; 96 Am. Dec. 464, the court said:

Delivery of a key of a trunk containing valuable articles, such as money and government bonds, which are capable of being taken into the hand is not a valid delivery of such article.

We are of the opinion that the petitioners have failed to prove either actual or constructive delivery. This is indispensable. *Allen-West Commission Co.* v. *Grumbles*, 129 Fed. 287–290; *In re Van Alstyne*, 207 N. Y. 298; 100 N. E. 802. Having reached the conclusion that there was no delivery sufficient to pass title to the securities, it is not necessary for us to determine whether any gift was ever intended by the alleged donors or whether there was acceptance by the wives.

*Decision in each proceeding will be entered for the respondent.*