MARY KATHERINE DULIN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.
H. L. DULIN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.
EUGENIA BELLE DULIN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 41264, 41265, 41266. Promulgated April 25, 1932.

*Mabel Walker Willebrandt, Esq.*, and *Wm. Montgomery Smith, Esq.*, for the petitioners.

*O. J. Tall, Esq.*, for the respondent.

**OPINION.**

SEAWELL: In determining the issues here involved it is necessary to construe and apply the following statutes and regulations:

Section 212 (b) of the Revenue Acts of 1924 and 1926:

(b) The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income. If the taxpayer's annual accounting period is other than a fiscal year as defined in section 200 or if the taxpayer has no annual accounting period or does not keep books, the net income shall be computed on the basis of the calendar year.

Article 50, Regulations 65 and 69 (substantially the same):

ART. 50. *When included in gross income.*—Gains, profits and income are to be included in the gross income for the taxable year in which they are received by the taxpayer, unless they are included when they accrue to him in accordance with the approved method of accounting followed by him. * * * [Reg. 65.]

Section 204 of the Revenue Acts of 1924 and 1926:

(a) The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property; except that—

\*      \*      \*      \*      \*      \*      \*

(2) If the property was acquired by gift after December 31, 1920, the basis shall be the same as it would be in the hands of the donor or the last preceding owner by whom it was not acquired by gift. \* \* \*

\*      \*      \*      \*      \*      \*      \*

(4) If the property was acquired by gift or transfer in trust on or before December 31, 1920, the basis shall be the fair market value of such property at the time of such acquisition.

The petitioners adopted and consistently followed the method of reporting in each annual tax return all dividends received up to the time of filing their returns and all dividends received prior to March 15, of any year, appear in the schedule of dividends attached to the tax returns for the prior years. The dividends received prior to March 15, 1924, were reported in the tax returns for the calendar year 1923 and the dividends received prior to March 15, 1925, were reported in the tax returns for the calendar year 1924. Their returns were prepared on calendar year forms by L. H. Petree and there is no evidence indicating that it made any difference to them whether the returns were made on a fiscal year basis or on a calendar year basis. The testimony shows Petree was influenced in including in the calendar year returns dividends received after December 31 and prior to the filing of the returns the following year by a ruling that dividends paid during the first 60 days of any calendar year should be deemed to have been paid out of surplus for the previous year in computation of the corporation's invested capital.

The record shows that the dividends received by Mrs. Dulin and here daughter were their only income and were paid as or when declared. It follows therefore that their returns would have been the same whether prepared on the cash receipts and disbusements basis or on the accrual basis.

In the face of the return of Mrs. Dulin for the calendar year 1922—filed and in evidence as an exhibit by her, though taxes for that year are not in issue—it is stated that the return is " for period begun Dec. 31st, 1921 and ended Dec. 31st, 1922." All the returns of petitioners are made on the calendar year forms of similar character, with no mention of returns being from March 15 to March 15, and no notation accompanying the returns so indicating until 1926, when the returns for the calendar year 1925 were filed.

The record shows no books were kept by Mrs. Dulin and fails to show that any of the petitioners kept any books or had any annual

accounting period on a fiscal year basis as defined in section 200 of the Revenue Acts of 1924 and 1926. The net income, therefore, in our opinion, should be computed on the basis of the calendar year, as provided in section 212 (b), *supra*. The record shows it was so computed by the respondent, who restored the dividends in question to taxable net income for the calendar years in which they were received, in accordance with the law and regulations heretofore mentioned, and in so doing he committed no error and his action is accordingly approved.

The contention in behalf of petitioners that they adopted a fiscal year basis for 1924 and prior years in making their returns, that their method clearly reflected income, and that under such circumstances the respondent had no right to change such method as indicated by his deficiency notice, appears to be based on the assumption that the petitioners' method of returning dividends as income for the period March 15 to March 15 constituted a fiscal year within the meaning of the revenue law. This is erroneous. We quote what we said in *Clara A. McKee, Administratrix*, 11 B. T. A. 1381, as applicable and controlling here:

\* \* \* The taxing statute specifically requires that net income shall be computed upon the basis of a twelve-month period "ending on the last day of any month other than December" or on the basis of the calendar year. A twelve-month period ending April 17 is not a "fiscal year" as defined in the statute and is not an accounting period which the respondent has authority under the statute to accept as a basis for an income-tax return.

See also *Fred R. Drake*, 1 B. T. A. 1235; *The Duriron Co.*, 18 B. T. A. 554.

For the purpose of determining the basis to be used in the computation of the gain or profit on the sale in 1926 by Mrs. Dulin and her daughter, Mary Katherine Dulin, of 250 shares, each, of the Anderson-Dulin-Varnell Company stock, it is necessary for us to first determine whether there was in December, 1920, or not until January, 1921, a completed and valid gift of the 510 shares (mentioned in our findings of fact and of which that sold was a part) to Mrs. Dulin by her husband, H. L. Dulin. As this Board has said:

\* \* \* To constitute a gift in contemplation of law, there must be (1) an intention on the part of the donor to give—that is, to surrender complete control and dominion over the property to the donee; (2) there must be an acceptance of the gift by the donee; and (3) there must be a transfer of title accompanied by delivery of the property. *Charles Greenblatt*, 2 B. T. A. 77; *Estate of David R. Daly*, 3 B. T. A. 1042; *F. J. Vlchek*, 7 B. T. A. 1244; *J. T. Lupton*, 19 B. T. A. 166. [See *J. T. Hedrick*, 24 B. T. A. 444, 453.]

See also *Allen-West Commission Co.* v. *Grumbles*, 129 Fed. 287–290; *Edson* v. *Lucas*, 40 Fed. (2d) 398, 404.

The record shows very clearly the intention of H. L. Dulin to give his wife the aforesaid 510 shares and this intention was so expressed on December 23, 1920, when he told her he gave her the stock. Mrs. Dulin then indicated her acceptance of the alleged gift of the stock.

The question remaining for our determination is whether the third requisite entering into the making of a completed and valid gift— the transfer of title, accompanied by delivery—was complied with in December, 1920, as contended by Mrs. Dulin, or not until January 4, 1921, insisted upon by the respondent.

The record shows that Mrs. Dulin never saw nor had in her personal possession in 1920 the original stock certificate calling for the 510 shares of stock which her husband told her in December, 1920, he was giving her and which he delivered to L. H. Petree, the office manager, with instructions to have a new certificate for the same number of shares prepared in the name of Mrs. Dulin. When the certificate was handed Petree for the purpose indicated it was not endorsed by H. L. Dulin and was not endorsed by him until Petree on January 4, 1921, presented it to him for endorsement so proper entries might be made on the books of the Anderson-Dulin-Varnell Company and a new certificate might be issued in the name of Mrs. Eugenia Belle Dulin. Such a certificate was so issued and delivered to H. L. Dulin for his wife, Eugenia Belle Dulin, but the record does not disclose whether ever actually delivered to her. Numerous authorities are cited and plausible arguments presented by counsel for each of the parties in support of their respective contentions.

In the circumstances of the instant case, it is not necessary to discuss many of the authorities cited, as the Anderson-Dulin-Varnell Company is a Tennessee corporation and the question now under consideration is a Tennessee transaction and, in our opinion, controlled by Tennessee law. The Tennessee decisions are, however, in accord with the law as stated in *Bowen* v. *Kutzer*, 167 Fed. 281, in which the court said:

Gifts *inter vivos* of personal property, to be effective, must be accompanied by the delivery of the possession, the donor parting with all present and future dominion over it; the donor must be divested of, and the donee invested with, the right of property in the subject of the gift; it must be absolute, irrevocable, without any reference to its taking effect at some future time; and without such proof, clear and explicit, the gift fails. No mere promise or declaration of intention to give will suffice, however clearly the same may be established. Nothing short of a complete and unconditional delivery is sufficient to constitute a valid gift and, until delivery, the gift is inchoate and revocable.

In *Marshall* v. *Russell*, 93 Tenn. 261 (25 S. W. 1070), the court said:

* * * The settled rule is that a parol gift of a chattel or chose in action, whether it be a gift inter vivos or causa mortis, does not pass the title to the

donee without delivery and transfer of the possession. The effect of a valid delivery is to place the subject of the gift under the control and dominion of the donee, and his title and right of possession, by such gift and delivery, become absolute and irrevocable. *McEwen* v. *Troost*, 1 Sneed, 185. It is therefore essential to the validity of such a gift that the transaction be fully completed. While anything essential remains to be done, there exists a *locus poenitentiae*, and what has been done may be revoked. An absolute gift, which will divest the donor's title, requires a complete renunciation on his part, and acquisition on the part of the donee, of all the title to and interest in the subject of the gift. It is, however, settled that the delivery need not be directly to the donee, but may be made to a third party for the donee. If the delivery to the third party is simply for the purpose of delivery to the donee as agent or messenger of the donor, the gift is not completed until the subject of the gift is actually delivered to the donee. The donor can revoke the agent's authority, and resume possession of the article. When the delivery to the third person is to him in the capacity of a trustee for the donee, and not as agent of the donor, such delivery completes the gift. To constitute such a case, the circumstances should show a full relinquishment of dominion over the property to the trustee, for the purpose of the trust, so that the trustee shall not be the agent of the donor, but shall act for the donee, instead. *Minchin* v. *Merrill* 2 Edw. Ch. 333; *Neufville* v. *Thomson*, 3 Edw. Ch. 92; *Dresser* v. *Dresser*, 46 Me. 48; *Scott* v. *Lauman*, 104 Pa. St. 593.

See also the later case of *Cates* v. *Baxter*, 97 Tenn. 443; 37 S. W. 219.

In *Chandler* v. *Roddy* (Supreme Court of Tennessee), 43 S. W. (2d) 397, is a very recent, full and satisfactory discussion of what is necessary to constitute a completed and valid gift. In it the learned Chief Justice of the Supreme Court of Tennessee reviews numerous prior decisions of that court and his opinion therein expressed is controlling and conclusive of the issue we are now considering. In that case the complainant, Eugenia Williams Chandler, instituted suit to establish her right and title to certain personal property, various certificates of deposit, shares of stock and the like, which she claimed her father, D. H. Williams, gave her prior to his death. Her father in 1920, prior to her marriage, called her into his office, where there was a small iron safe, the contents of which he showed her, the securities of the character above indicated being therein, inclosed in envelopes which he had endorsed as containing the property of his daughter, Eugenia Williams, and there and then told her that he gave her all the securities therein, that they were all hers. In the opinion it is further stated that he taught her the combination of the safe and that some time later, after she had forgotten the combination of the safe, she was in the office and he again taught her the combination and repeated that he had given her the contents of the safe. About 1926 her father and her husband removed the securities, etc., mentioned from the safe to a safe-deposit box in a bank, her husband testifying that his father-in-law

stated at the time that all that property he had given to his daughter, that it was hers, and the son-in-law further testified that the securities were inclosed in envelopes which his father-in-law had endorsed as containing the property of Eugenia Williams Chandler, "Chandler" appearing to have been added in most cases to the original endorsements. All the securities mentioned stood in the name of D. H. Williams and none was endorsed by him to his daughter except one certificate for 732 shares of a certain stock. The court in its opinion said:

* * * There seems to be no doubt but that D. H. Williams repeatedly declared that he had given all the property here in controversy to his daughter. We think the clear preponderance of proof is that Williams indorsed the envelopes containing the securities involved as the property or personal property of his daughter and that these securities were found in these envelopes in the bank box after his death. Likewise the testimony of the bank officials shows that Williams authorized her entry into this box in 1928. Williams died October 1, 1929.

The question here is whether there had been any such delivery of the property by the father to the daughter as to complete a gift to her. A surrender of dominion and control by the donor is, of course, essential to a gift. The father here retained possession of the property until his death, but the argument of counsel for the daughter is that his possession was as her agent.

D. H. Williams, however, after making the declarations of the gift to his daughter of all said securities and doing other things detailed in the opinion tending to show he gave them to her, afterwards dealt with some of them as being still owned by himself. The court decided that the only completed and valid gift by D. H. Williams to his daughter was of the 732 shares of stock called for by the certificate which he had specifically endorsed to her and which he thereafter held as agent for her, his failure to transfer manual possession to her of same doubtless being an oversight.

The law never presumes a gift, the burden being on the claimant to establish it. *Bolton* v. *Bolton*, 138 N. E. 158; *Allen-West Commission Co.* v. *Grumbles*, *supra*. Furthermore, the general rule of law is that the burden is on the donee to establish all the facts essential to the validity of a gift. *Walker* v.*Welsh*, 11 N. E. 727; *In re Housman's Estate*, 121 N. E. 357; *Chambers* v. *McCreery*, 98 Fed. 783; affd., 106 Fed. 364.

In the instant case, the mere declaration of Dulin to his wife, Eugenia Belle Dulin, and to Petree that he gave the 510 shares of stock to her—without endorsing or delivering the certificate to her—left him, H. L. Dulin, in complete control of the situation, with the power to revoke the gift, endorse the certificate and transfer the stock to any one he might wish, just as D. H. Williams did or might have done in reference to the securities not endorsed nor delivered to his daughter and held in *Chandler* v. *Roddy*, *supra*, not to have

been a completed and valid gift to his daughter, although he had told her and others he gave them to her. All the requisites to make a completed and valid gift to Mrs. Dulin of the said 510 shares were not in our opinion complied with prior to January 4, 1921, when the certificate was endorsed and a new certificate issued in her name and held for her by her husband.

In order for this Board to hold that the gift of the 510 shares to Mrs. Dulin was a completed and valid gift in December, 1920, it would be necessary for us to find that L. H. Petree was the agent of or trustee for Mrs. Dulin at the time her husband handed the certificate to Petree, with instructions as heretofore stated in our findings of fact. In our opinion, the record does not warrant such conclusion, but shows Petree to have then been the agent of H. L. Dulin in the carrying out of his instruction relative to the transfer of the stock in order that the absolute title to the same might pass to Mrs. Dulin. Petree, after the issuance of the new certificate, did not hold the same as agent or trustee for Mrs. Dulin as he would naturally have done had he so considered himself, but delivered it to H. L. Dulin without, so far as the record shows, any instructions from Mrs. Dulin to that effect.

In view of our decision that there was not in 1920 a completed and valid gift of the 510 shares to Mrs. Dulin, there is no occasion for arriving at the fair market value of the 510 shares of stock as at December 23, 1920, inasmuch as the value to be used, according to the respondent's determination and contention, is the value at March 1, 1913, which has not been contested.

In the circumstances shown by the record herein, the respondent did not, in our opinion, commit error in treating the returns of the petitioners as on a calendar year basis instead of on an alleged fiscal year basis as contended by petitioners and the evidence, in our opinion, is not sufficient to overcome the presumption of the correctness of the respondent's determination of deficiency in tax in any of the cases, except in Docket No. 41266, in which respondent admits that he erred by increasing taxable net income for the year 1926 by the full amount of $3,750 in dividends received by the petitioner during the year 1926 from the Holston National Bank, inasmuch as 46.53 per cent of such dividends represent a return of capital and taxable net income should, therefore, be reduced by the amount of $1,744.88.

*Judgment will be entered for respondent in Docket Nos. 41264 and 41265, and under Rule 50 in Docket No. 41266.*